**David Dail FARRIS & Trisdee Farris, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 62463, 62464.**

Court of Criminal Appeals of Texas.

Oct. 27, 1982.

Rehearing Denied Jan. 26, 1983.

Douglas H. Parks, John Ellis, Dallas, for appellant.

Henry Wade, Dist. Atty., William T. Westmoreland, Jr., and Douglas D. Mulder, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before ROBERTS, TOM G. DAVIS and W.C. DAVIS, JJ.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from two convictions for sexual abuse of a child. After the jury found appellants guilty, it assessed punishment at ten years for David Farris and five years for Trisdee Farris.

Each appellant was convicted, under separate indictments, of sexually abusing the same complaining witness.

In his first ground of error, appellant David Farris complains that, "the verdict of the jury is not supported by the evidence." Specifically, appellant asserts that there was no evidence the crime was committed, "without the consent of the Complainant," as alleged in the indictment.

Though V.T.C.A. Penal Code, Sec. 21.10, does not require lack of consent on the complaining witness' part, lack of consent was alleged in the indictment and included in the court's charge to the jury. The State is bound by its allegations in the indictment and must prove them beyond a reasonable doubt. *Moore v. State,* 531 S.W.2d 140 (Tex.Cr.App.1976).

Appellant's contention is without merit. The complaining witness, a six-year-old female, testified that appellant threatened her with a knife, before she took her clothes off, in an effort to get her to take off her clothes. The disrobing of the complainant and other children preceded the alleged acts of deviate sexual intercourse. The complainant testified to being scared of the knife. She was also wrapped in a blanket, shut in a closet, and stuck with pins. She testified that appellant "made" her and other children take their clothes off.

K— P—, a minor who was with the complainant at appellant's house, testified that appellant threatened the children. He also threatened to kill their mothers and fathers if the children told about the activities going on inside the house. She stated that appellant would come and get the children and bring them to his house.

K— R—, another neighborhood child who regularly went to appellant's house, testified that appellant threatened the children and told them not to tell their parents about activities occurring in the house.

We find that the foregoing evidence was sufficient to show lack of consent to deviate sexual intercourse on the complaining witness' part.

In appellant Trisdee Farris' first ground of error and appellant David Farris' second ground of error, complaint is made that the State was erroneously allowed to bolster the testimony of its own witnesses.

At trial, testimony was heard from four children ranging in age from five to nine. Two of the children were complainants and two had witnessed activities at the appellants' house.

The State sought to prove that appellants engaged in various acts of deviate sexual intercourse (including fellatio and cunnilingus) with the complaining witnesses at the appellants' home. There was evidence that the appellants took pictures of this activity.

As each child testified it became apparent that the alleged acts of sexual abuse involved many adults in several locations.

One or more of the child witnesses testified to the following facts: the appellants, "Jason," "Scott," "Reginald," "Reggie," and "Anne," all engaged in deviate sexual intercourse with the complaining witness and other children and took pictures of the acts; the children were sometimes tied in a blanket, put in appellant David Farris' car, and driven to meet with the other adults; one of these meetings, at which acts of deviate sexual intercourse took place, occurred on a Saturday afternoon in a back office of an automobile dealership; appellant David Farris, "Jason," and "Scott," took the children to various drugstores and grocery stores where the adults stole items from the stores and shot off guns or told the children they had shot off guns.

This testimony was elicited on cross-examination. It was not obtained through impeachment or attempts at impeachment. The cross-examination far from being vigorous in nature was extremely mild.

There was no surprise in this testimony or inconsistency with previous statements. The children involved had been interrogated by defense attorneys on November 20, 1978 and that is when the defense learned of the allegations involving other adults. Trial was held on December 11, 1978.

On rebuttal, the State called Dr. James P. Grigson, a psychiatrist, to the stand. Grigson's testimony, given over objection, was in pertinent part as follows:

"Q. Doctor, let me ask you in particular about the type of sexual fantasies that, say, the upper age of that group, say a nine-year-old would engage in?

"...

"Q. Doctor, do they think or fantasize in terms of oral sodomy?

"A. A nine-year-old?

"Q. Yes, sir.

"A. *Of course not.*

"Q. Do they fantasize in these sexual fantasies of kissing a male on the penis or kissing a female in the genital area, the private sexual parts of a female?

"A. Are you talking about a child?

"Q. Yes, sir, a nine-year-old.

"A. *No, no, absolutely not.*

"Q. Doctor, would sado-masochistic sexual relationships enter into this type of behavior such as sticking a child with a pin to hear the child scream?

"A. Talking about a child having that sort of—

"Q. Would they fantasize in that respect?

"A. *Oh, absolutely not. That would— that would not in any way at all be any sort of—they wouldn't even have that type of awareness from a sexual standpoint. That would only fall into the adult awareness.*

"Q. You say the child would not fantasize in this sado-masochistic—

"A. *No way, no, sir.*

"Q. Doctor, would the sexual fantasy level of, again, a nine-year-old be compatible or consistent with, again, the sado-masochistic sexual relationship such as tying children up or wrapping them up in a blanket, putting them in a closet to hear them scream, things of that nature? Would they be sophisticated enough in their sexual development to fantasize in that form or fashion?

"A. *... No, it would in no way at all enter into a child's concept or awareness or appreciation to be able to derive any type of sexual pleasure from any type of behavior such as that.*

"Q. How about taking pictures?

"A. Well, they would probably get a big kick out of working a camera or, you know—

"Q. Taking pictures of sexual acts.

"A. Oh, no.

"Q. Oral sodomy.

"A. *Oh, absolutely not. No, of course not. . . .*" (Emphasis added.)

It is a well-settled rule in this and other jurisdictions that the State may not bolster or support its own witnesses unless they have been impeached on cross-examination. *Pless v. State,* 576 S.W.2d 83 (Tex. Cr.App.1978); *Robinson v. State,* 550 S.W.2d 54 (Tex.Cr.App.1977); *Adams v. State,* 514 S.W.2d 262 (Tex.Cr.App.1974); *Acker v. State,* 421 S.W.2d 398 (Tex.Cr.App. 1967). See also, C. McCormick, McCormick on Evidence, Sec. 49 (2nd Ed. 1972).

The State does not contend that Dr. Grigson's testimony did not constitute bolstering. Dr. Grigson, who was given hypotheticals exactly matching the facts in the instant case, stated repeatedly and unequivocally, that children nine and under are totally incapable of fantasizing about the kinds of acts appellants allegedly engaged in with the complaining witness and the other children who testified.

Grigson's testimony was received into evidence after all of the children testified concerning the other adults, the automobile trips, and the robbery spree.

The State does not point in its brief, nor did it point at trial, to any impeachment of the child witnesses or any vigorous cross-examination which tended to undermine their testimony. *Smith v. State,* 595 S.W.2d 120 (Tex.Cr.App.1980).

Our examination of the record reveals two or three instances of attempted impeachment or impeachment of the child witnesses. Such instances were not on material matters and were totally unrelated to the bolstering testimony of Dr. Grigson.

The bolstering testimony must be related to the impeachment to be admissible. See *O'Bryan v. State,* 591 S.W.2d 464, 476 (Tex. Cr.App.1979). "The rehabilitating facts must meet a particular method of impeachment with relative directness. The wall, attacked at one point, may not be fortified at another and distinct point." McCormick on Evidence, supra, at 103.

We are unable to hold that the improper testimony of Dr. Grigson was harmless. It would be unreasonable not to conclude that the testimony of the small children was bolstered immeasurably by testimony that they were utterly incapable of fantasizing about deviate sexual intercourse. See *Robinson v. State,* supra, at 60, 61.

The judgments are reversed and the causes are remanded.