**James Anthony MILLER, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 05–87–00445–CR.**

Court of Appeals of Texas, Dallas.

Sept. 6, 1988.

Rehearing Denied Oct. 12, 1988.

J. Stephen Cooper, Dallas, for appellant.
Yolanda M. Joosten, Dallas, for appellee.

Before DEVANY, LAGARDE and THOMAS, JJ.

LAGARDE, Justice.

James Anthony Miller appeals from a conviction, following a jury trial, for aggravated sexual assault. Punishment, enhanced by two prior convictions, was assessed by the jury at life imprisonment. Because we agree with appellant's second and third points of error that he was denied the effective assistance of counsel as guaranteed by the United States and Texas Constitutions, we reverse the conviction

and remand the cause to the trial court for a new trial.

█ The test for determining whether a defendant was denied the effective assistance of counsel at trial applies equally to challenges made under the United States and the Texas Constitutions. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984); *Hernandez v. State*, 726 S.W.2d 53, 55–57 (Tex. Crim.App.1986). In order to establish that he was denied the effective assistance of counsel, a defendant must show that counsel's performance was deficient and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687, 694, 104 S.Ct. at 2064, 2068; *Moore v. State*, 700 S.W.2d 193, 205 (Tex.Crim.App. 1985), *cert. denied*, 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 289 (1986). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 687, 694, 104 S.Ct. at 2064, 2068. In making such a determination, this court must consider the totality of the evidence and the circumstances of the particular case. *Strickland*, 466 U.S. at 695, 104 S.Ct. at 2068–2069; *Ex parte Raborn*, 658 S.W.2d 602, 605 (Tex.Crim. App.1983). Trial strategy will be reviewed by appellate courts only if the record demonstrates that the action was without any plausible basis. *Ex parte Ewing*, 570 S.W. 2d 941, 945 (Tex.Crim.App.1978); *Carr v. State*, 694 S.W.2d 123, 126 (Tex.App.— Houston [14th Dist.] 1985, pet. ref'd). With this standard in mind, we turn to the present case.

The record reflects that, prior to trial, defense counsel filed a Motion for Production and Inspection of Evidence and Information Which May Lead to Evidence, a Motion to List State's Witnesses and a Motion in Limine, all of which the court granted. Excluding voir dire, appellant's trial lasted one day. During the guilt or inno-

cence phase of trial, five witnesses testified on behalf of the State: the complainant, a ten-year-old boy; Bryan Pruitt, the doctor who examined complainant after the offense was reported; complainant's stepmother; complainant's mother; and Sue James,[1] a counselor for the Dallas County Rape Crisis and Child Sexual Abuse Center. Because Dr. Pruitt testified that his examination of complainant revealed "no objective evidence" that the assault took place, the primary issue at trial was the credibility of complainant. This issue was first injected into the trial by the State when, during the direct examination of Dr. Pruitt, the first witness called, the following colloquy occurred:

[PROSECUTOR] Now, taking that group of people whom you have interviewed complaining of sexual assault, do you feel like that you have the experience to be able to determine in your own mind whether or not their claim of sexual assault is in fact well founded by observing their demeanor, their mannerisms, the way they tell you their history? Can you make a determination whether or not, by those objective things that you observe, whether or not this person is making up the story or whether or not they in fact have been sexually assaulted? Do you feel like you have that experience?

A In general, yes.

*     *     *     *     *     *

Q Now, do you have an opinion— Even though there is an absence of objective medical evidence, do you have an opinion, based on these other things that you observed in interviewing [complainant], based on your experience? Do you have an opinion whether or not he was in fact sexually abused?

A Yes, I have an opinion.

Q What is your opinion, Doctor?

A My opinion, based on that experience, is that he was. There was no doubt in my mind that night after I

---

1. We note that Sue James's testimony was the basis for our reversal of the conviction in *Black v. State*, 634 S.W.2d 356 (Tex.App.—Dallas 1982, no pet.) and, along with the testimony of anoth-

er expert witness, was the basis for our reversal of the conviction in *Kirkpatrick v. State*, 747 S.W.2d 833 (Tex.App.—Dallas 1987, pet. filed).

spoke with that child that he had in fact been sexually abused.

Complainant's mother testified:

[PROSECUTOR] Okay. Now, there's been some testimony from [complainant's stepmother] that occasionally your son has trouble about telling lies and that she can always figure out, you know, when he hasn't been telling the truth. Does your son lie to you about certain things?

A  Yes, sir, he lies to me about his homework at school. Mostly school. But—

Q  School-related things?

A  (Nods head up and down.) If he got—If he got in trouble at school, he'll lie about that.

Q  Has he ever lied to you about any other sorts of things, other than about going to school, school-related things?

A  No, sir.

Q  Now, when he told you about this —what this man had—[appellant] had done to him, do you think he was lying about that?

A  No, sir.

Q  Okay.

A  He—He set next to me with tears in his eyes and said, "He hurt me."

Q  Do you think he could have made up this whole story?

A  No, sir.

Q  Can you think of anyone who would try to get him to make up a story like this against a man whom you don't even know?

A  No, sir.

The most egregious testimony came from Sue James, a counselor at the Dallas County Rape Crisis and Child Sexual Abuse Center. After testifying concerning the "four predictable phases of interaction in a case of child sexual abuse," the tactics used against a child by a "skilled abuser," and general behavioral characteristics of child sex abuse victims,[2] James testified:

[PROSECUTOR]: Now, when you find all four of these things in a case of child sexual abuse, along with some other things that we'll talk about, if you find all four of these things present, can you—does that mean something to you with regard to the validity of the claim of child sexual abuse?

A  It means there's an extraordinarily high probability of validity [to the charge of sexual abuse].

\*    \*    \*    \*    \*    \*

Q  All right. How would you go about trying to identify a false report of child sexual abuse?

A  Well, I mean, I'm going to use what we know about actual cases, my own experience with cases. But, in addition to that, we also have discovered some patterns in false report that involve some self-serving motivation on the part of the adult who gets the child to tell. So, we'd also look at those patterns. If you see something in the adult who is reporting that their child has been sexually assaulted that has some self-serving motives, then you're going to want to look at that thoroughly, and there's a thirty-point assessment plan that we use that's very thorough.

\*    \*    \*    \*    \*    \*

Q  All right. Through interview techniques that you can use to determine whether or not a child has—is being truthful about an event of child sexual abuse, for instance, could you—could you start in the middle and go backwards with them?  Or start in the middle and go forward instead of starting at the beginning and going all the way through?  Are there techniques like that you can use?

A  Sure. Anything that is sort of a surprise question to the child that's been coached or is giving a false account of at the urging of adults, that's going to throw them off. Whereas with you, if you've had that actual experience, be-

---

**2.**  We have recently held that an expert's testimony concerning general behavioral traits of child sexual abuse victims as a class is admissible.

*Kirkpatrick,* 747 S.W.2d at 836–837; *see* TEX.R. CRIM.EVID. 702.

cause it's there, you can call—recall any part of it.

Q  All right.  Now, how about the detail for the surroundings, what people were wearing, the order in which the events occurred?  Are these details that you look for in determining the validity of a claim?

A  Well, yes, we did.

Q  Okay.  Was [complainant] able to give you that type of detail?

A  Yes, he was.

Q  Okay.  Now, based on all of these things that we have discussed and your interview with [complainant], do you have an opinion as to whether or not [complainant] has in fact been sexually abused?

A  Yes—

[DEFENSE COUNSEL]: I object to that, Your Honor.  That invades the province of the jury.  That's an ultimate jury issue.[3]

THE COURT: Overruled.  I'm going to allow it.

[PROSECUTOR]: Do you have an opinion as to whether or not he has in fact been sexually abused?

A  This child has been sexually abused.

Q  Is that your professional opinion?

A  Yes, it is.

Q  Do you think that a nine or ten-year-old child would be able to pull the wool over your eyes?

A  Well, no, I don't.

Q  Okay.  Do you think that if this was a—a programmed claim by another adult, if this were a made-up story all on his own, do you think that you, with your qualifications and training and experience, would be able to ferret that out?

A  *With the years and the large number of cases, I've become particularly adroit at doing that.  In fact,*

*family courts tend to assign me very difficult cases that have been seriously contaminated so I can discover what the truth is in those matters.*  [Emphasis added.]

The above testimony was objectionable for several reasons.  First, it is well-settled that a witness may not give an opinion concerning the truth or falsity of another witness's testimony.  *Ayala v. State,* 171 Tex.Crim. 687, 689, 352 S.W.2d 955, 956 (1962); *Kirkpatrick,* 747 S.W.2d at 836.  Even expert testimony concerning a complainant's propensity to tell the truth is impermissible.  *Black,* 634 S.W.2d at 358.  In *Black* and *Kirkpatrick,* we re-emphasized this fundamental rule where we reversed convictions based on James's testimony that "I believe [complainant is] telling the truth," *Black,* 634 S.W.2d at 357, and "I can make that determination [whether complainant is imagining her story] ... she is telling an experience that she actually had." *Kirkpatrick,* 747 S.W.2d at 837.  Thus, the testimony in the present case by James, Pruitt, and complainant's mother that each believed complainant was telling the truth was inadmissible and should have been objected to by defense counsel.

Second, testimony such as that outlined above also constituted impermissible bolstering and, for that additional reason, was inadmissible.  *Farris v. State,* 643 S.W.2d 694, 697 (Tex.Crim.App.1982); *Black,* 634 S.W.2d at 358.  In *Farris,* the State, over objection, presented the testimony of a psychiatrist that children were incapable of fantasizing concerning the kinds of acts the defendants in that case were accused by the child witnesses of committing.  *Farris,* 643 S.W.2d at 697.  The court held that such testimony constituted improper bolstering, rejected the argument that the error was harmless, and reversed the convic-

---

**3.**  This objection, made during the State's questioning of its last witness in its case in chief, was the only objection voiced by defense counsel during the guilt-innocence stage of the trial and, in light of the previously unobjected-to testimony concerning the same issue, came too late to preserve any error.  *See Hopkins v. State,* 480 S.W.2d 212, 218 (Tex.Crim.App.1972); TEX.

R.CRIM.EVID. 704.  Defense counsel did voice an objection at the punishment stage of the trial concerning certification and cross-exemplification of the papers contained in the pen packet relating to the out-of-state conviction alleged in paragraph three of the indictment; however, we also note that appellant pleaded TRUE to both enhancement paragraphs of the indictment.

tions. *Id.* Similarly, in *Black*, we emphasized that James's testimony that "I believe [complainant is] telling the truth" constituted impermissible bolstering. *Black*, 634 S.W.2d at 358. In doing so, we repeated the rule that "an unimpeached witness may not be bolstered simply because [his] testimony may be disbelieved." *Id., citing Adams v. State*, 514 S.W.2d 262, 264 (Tex. Crim.App.1974) and *Lyons v. State*, 388 S.W.2d 950 (Tex.Crim.App.1965). It is only when a witness is placed in the position of having testified differently from earlier testimony that a party will be permitted to bolster its own case. *See Adams*, 514 S.W. 2d at 264. In the present case, the State bolstered its own case during direct examination of its first witness, who clearly had not been impeached; thus, such bolstering was clearly impermissible. In addition, although some questions were asked by defense counsel during cross-examination of Pruitt, complainant's stepmother, and James concerning the possibility of false reports of child sexual abuse and complainant's propensity to tell the truth,[4] none of the witnesses wavered in their testimony. Thus, the requirement that a witness be placed in the position of testifying differently from earlier testimony before bolstering is permitted was not met and defense counsel should have objected to such testimony.

Finally, in addition to bolstering the complainant's testimony, James, through the underlined portions of her testimony quoted above, was permitted to bolster her own credibility and to testify that she was "particularly adroit" at determining who is telling the truth.

Of course, the right to effective assistance of counsel does not mean that a defendant is entitled to errorless counsel. *Saylor v. State*, 660 S.W.2d 822, 824 (Tex. Crim.App.1983). Rather, a fair assessment of counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances, and to evaluate counsel's conduct from his perspective at the time,

*Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, and a defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Id.* A full inquiry into the strategy or tactics of counsel should be made only if from all appearances after trial, there is no plausible basis in strategy or tactics for his actions. *Small v. State*, 692 S.W.2d 536 (Tex.App.— Dallas 1985, pet. ref'd), *citing Ex parte Burns*, 601 S.W.2d 370, 372 (Tex.Crim.App. 1980) (en banc). In the present case, we can glean no sound trial strategy in defense counsel's failure to object to the extensive, inadmissible testimony concerning the only real issue at trial—complainant's credibility. Thus, we hold that defense counsel's performance at trial was deficient and resulted in denying appellant the effective assistance of counsel.

Having determined that defense counsel's performance at trial was deficient, we turn to the second prong of the *Strickland* test: whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. In other words, we must determine whether there is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. We hold that appellant has satisfied his burden of showing such prejudice.

As we have noted, the primary issue at trial was the credibility of complainant, an issue first injected into the trial by the State during the direct examination of its first witness. As the court noted in *Farris*, "it would be unreasonable not to conclude that the testimony of the small children was bolstered immeasurably by testimony [by a psychiatrist] that they were utterly incapable of fantasizing about deviate sexual intercourse." *Farris*, 643 S.W.2d at 697. Similarly, it would be unreasonable not to conclude that the testimony of the ten-year-old complainant in the present case was bolstered immeasurably by the direct testimony of two expert wit-

---

4. We note that these questions by defense counsel were far from vigorous cross-examination and appeared to have no effect on the witnesses' testimony.

nesses that the complainant was telling the truth, particularly when one of the witnesses, James, was also permitted to testify that she was assigned to difficult cases by "family courts" because of her exceptional ability to judge truthfulness. In addition, we repeat that there was no objective medical evidence that a sexual assault occurred.

In determining whether there was prejudice, we have considered the argument of defense counsel wherein he told the jury:

> Now, we've had some very persuasive testimony here in this case. I'm sure that the events that have been described to you have in some way, some form or fashion, happened. The question is has it been proven beyond a reasonable doubt that Mr. Miller is the person who did it.

We have carefully considered, therefore, whether or not, from the perspective of defense counsel, his strategy was to essentially concede that an assault occurred and to contest only the identity of the person who did it. If so, it could be said that the failure to object was simply trial strategy. However, the egregious inadmissible testimony went to the general *credibility* of the witness, and, inasmuch as the State's case as to identity was based essentially on the credibility of the complainant, we conclude that if it were trial strategy, it was not *sound* trial strategy. Consequently, we further conclude that appellant was prejudiced by the deficiency in counsel's performance. Finally, we note that the jury assessed punishment at life imprisonment, the maximum sentence allowed. In light of these factors, we hold that there is a reasonable probability that, but for counsel's error in failing to object to extensive, inadmissible testimony, the result of the proceeding would have been different.

We reverse the trial court's judgment and remand the cause to the trial court for a new trial.