Affirmed and Memorandum Opinion filed March 1, 2007








Affirmed and Memorandum Opinion filed March 1, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-00005-CR

____________

 

PATRICIA ANN WILSON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 185th
District Court

Harris County, Texas

Trial Court Cause No. 951,758

 



 

MEMORANDUM  OPINION  ON  REMAND

This case comes before us on remand from the Court of
Criminal Appeals.  In an unpublished opinion, we affirmed Wilson=s conviction.  Wilson
v. State, 14-04-00005-CR, 2005 WL 1869069 (Tex. App.CHouston [14th
Dist.] August 9, 2005).  The Court of Criminal Appeals vacated our opinion and
remanded the case in an unpublished, per curiam opinion stating that we failed
to adequately address three of the grounds raised on Wilson=s claim of
ineffective assistance of counsel.  Wilson v. State, PD-1661-05, 2006 WL
475291 (Tex. Crim. App. March 1, 2006).   








Appellant, Patricia Ann Wilson, was charged by indictment
with the offense of forgery of a commercial instrument, namely, a check.  See
Tex. Pen. Code Ann. ' 32.21 (Vernon
Supp. 2004).  A jury found her guilty, and the court sentenced her to 20 months= confinement in
the Texas Department of Criminal Justice, State Jail Division.  In two points
of error, appellant argues that (1) she received ineffective assistance of
counsel, and (2) the trial court erred by instructing the jury it could convict
her under the law of parties.  We affirm.

The record reflects that on June 2, 2003, an unidentified
person broke into Jana Livermore=s vehicle and
stole a purse containing Livermore=s wallet,
checkbook, and driver=s license.  Four days later, on June 6,
appellant and a friend entered an H.E.B. grocery store with one of Livermore=s stolen checks. 
In order to pay for the purchase of several items,[1]
appellant wrote the stolen check, produced Livermore=s driver=s license,[2]
and signed the check in Livermore=s name. 
Meanwhile, the two women attempted to distract the cashier, Kathryn Griggs, by
questioning her about a local restaurant.[3] 
The women=s behavior aroused the suspicions of both Griggs and
the store bookkeeper, James Bonner, who then alerted the store manager, Jocelyn
Budgewater.  Bonner and Budgewater pursued the two women into the parking lot,
where appellant was backing her vehicle out of a parking space.  When Bonner
approached the women about the check and suggested it was written for the wrong
amount, appellant became belligerent and accused Bonner of harassing the women
because they were black.  Appellant then backed out of the parking space and
drove away.  








As appellant drove off, Budgewater wrote down the vehicle=s license plate
number and returned inside the store to call the phone number listed on the
check.  Livermore answered and explained that the check, in fact, was stolen
and that the purchase had not been authorized.  Subsequently, Budgewater called
the Bellaire Police Department, who traced the license plate number to
appellant.  After further investigation, Bellaire Police Detective Zell Woods
created a photo array containing appellant=s picture.  Both
Griggs and Budgewater affirmatively identified appellant as the person involved
in the forgery.  Accordingly, Woods secured a warrant for appellant=s arrest.  

Upon realizing a warrant had been issued for her arrest,
appellant called both Budgewater and Woods to explain that she was not the
person who actually wrote the check.  Instead, appellant claimed her friend was
the person who had written the check and said that her friend was willing to
admit doing so.  Appellant agreed to meet with Woods and to bring her friend so
that a formal statement could be taken regarding the incident.  However,
neither appellant nor her friend appeared at the scheduled meeting.  Appellant
was thereafter arrested and charged with the forgery.

I.        Ineffective
Assistance of Counsel

In her first point of error, appellant contends she was
provided ineffective assistance of counsel.  Specifically, appellant contends
her trial counsel=s performance was ineffective because he
failed to (1) file a motion in limine or object to testimony that suggested she
was on parole; (2) object to Woods= testimony that he
believed appellant was less than truthful with him on the telephone; (3) object
to Budgewater=s hearsay testimony about what she was told regarding
the forger=s identity; and (4) object to extraneous offense
testimony regarding a string of related forgeries in which appellant was a
suspect.  








Both the United States and Texas Constitutions guarantee an
accused the right to assistance of counsel.  See U.S. Const. amend. VI; Tex. Const. art. I, ' 10; Tex. Code Crim. Proc. Ann. art. 1.05
(Vernon 1977).  The right necessarily includes the right to reasonably
effective assistance of counsel.  Strickland v. Washington, 466 U.S.
668, 686 (1984).  The United States Supreme Court has established a two‑prong
test to determine whether counsel is ineffective.  Id.  First, appellant
must demonstrate her counsel=s performance was deficient and not
reasonably effective.  Id. at 688B92.  Second,
appellant must show the deficient performance prejudiced her defense.  Id.
at 693.  Essentially, appellant must prove that her counsel=s representation
fell below an objective standard of reasonableness, based on prevailing
professional norms, and there is a reasonable probability that, but for her
counsel=s unprofessional
errors, the result of the proceeding would have been different.  Id.; Valencia
v. State, 946 S.W.2d 81, 83 (Tex. Crim. App. 1997).

Judicial scrutiny of counsel=s performance must
be highly deferential and we are to indulge the strong presumption that counsel
was effective.  Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App.
1994).  We assume counsel=s actions and decisions were reasonably
professional and that they were motivated by sound trial strategy.  Id. 
Moreover, it is appellant=s burden to rebut this presumption, by a
preponderance of the evidence, by producing evidence that illustrates why trial
counsel did what he did.  Id.  Any allegation of ineffectiveness must be
firmly founded in the record and the record must affirmatively demonstrate the
alleged ineffectiveness.  McFarland v. State, 928 S.W.2d 482, 500 (Tex.
Crim. App. 1996).  Generally, when the record contains no evidence of the
reasoning behind trial counsel=s actions, we cannot conclude counsel=s performance was
deficient.  Thompson v. State, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999);
Jackson, 877 S.W.2d at 771.








On direct appeal, appellate courts are generally unable to
grant relief for ineffective assistance claims because the record is
undeveloped.  See Garza v. State, ___ S.W.3d ___, 2007 WL 257615, at *7
(Tex. Crim. App. 2007) (deciding that it must defer to trial counsel=s decisions and
deny relief because the attorney=s reasons for his
actions or intentions did not appear in the record and there was at least a
possibility that the conduct could have been grounded in legitimate trial
strategy); Rylander v. State, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003) 
(stating that the record is generally insufficient to show whether or not trial
counsel=s strategy was
reasonable).  Moreover, there is a strong presumption that trial counsel=s decisions were
sound trial strategy.  Id.    The more appropriate vehicle for this
claim is by a writ of habeas corpusCa collateral
attackCbecause in that
proceeding trial counsel may explain his actions.  Id. at 110B11.  Otherwise,
the record will not provide the proof necessary to show that trial counsel was
sufficiently deficient to meet the first part of the Strickland test.  Id.
at 110.  Thus, appellants face not just the presumption that trial counsel=s performance was
based on sound trial strategy, but also the hurdle of an undeveloped record.

If appellant proves her counsel=s representation
fell below an objective standard of reasonableness, she still must
affirmatively prove prejudice as a result of those acts or omissions.  See
Strickland, 466 U.S. at 693; McFarland, 928 S.W.2d at 500.  Counsel=s errors, even if
professionally unreasonable, do not warrant setting the conviction aside if the
errors had no effect on the judgment.  See Strickland, 466 U.S. at 691. 
Therefore, appellant must prove that counsel=s errors, judged
by the totality of the representation, denied her a fair trial.  See
McFarland, 928 S.W.2d at 500.  If appellant fails to make the required
showing of either deficient performance or prejudice, her claim fails.  See
id.

Potential Issues Related to Ineffective Assistance not
Properly Raised








We note that appellant has, in several places within her
general ineffective assistance claim mentioned possible problems with trial
counsel=s representation. 
However, these single sentences without adequate discussion of the record and
authority do not amount to issues we may or should consider on appeal.  They
are not adequately briefed and are not  part of any larger argument.  For
example, appellant claims trial counsel Acould have@ challenged her
statements made to Detective Crim on the basis of Texas Code of Criminal
Procedure article 38.22 section 3 as well as under constitutional grounds, or
more generally on the ground of Athird party
statements implicating the defendant.@  Additionally,
appellant makes a passing reference to an alleged comment on her right to
remain silent during the State=s closing argument, which was made without
objection.  These statements do not adequately raise and argue additional
issues that we consider.

Appellant has provided this court, at most, examples of
cases in which allegedly similar behavior has warranted a finding of
ineffective assistance.  She has not adequately briefed to this court why those
errors mirror any alleged error here.  At most, her statements are made as side
statements to those grounds we address below.  

Evidence Appellant was on Parole

Here, an H.E.B. manager mentioned in passing on direct
examination that appellant called her on the phone and relayed various matters,
including that she was on parole.  Appellant=s counsel did not
object to this testimony.  Neither did counsel attempt to prevent such
testimony by filing a motion in limine.  The record is silent as to counsel=s trial strategy
in failing to object to the initial reference to parole or file a motion in
limine to prevent such a reference.  However, we do not regard these omissions,
i.e., the failure to object or file a motion in limine, as so outrageous
that no competent attorney would have engaged in similar conduct.  Moreover, an
appellate court is not required to speculate on the reasons behind trial
counsel=s actions when
confronted with a silent record.  Jackson, 877 S.W.2d at 771; see
also Thompson, 9 S.W.3d at 814 (holding that when the record provides no
explanation as to the motivation behind trial counsel=s actions, an
appellate court should be hesitant to declare ineffective assistance of
counsel).  Thus, as to counsel=s failure to make an initial objection or
file a motion in limine, appellant has failed to satisfy her burden to rebut
the presumption that counsel=s actions were reasonably professional and
motivated by sound trial strategy.

However, after
failing to object to the initial reference to parole or file a motion in
limine, appellant=s trial counsel began his
cross-examination of the witness by emphasizing her statement that appellant
was on parole, and then continued to question the witness about it for some
time:

Q.  You said that she told you she was on parole?








A.  If it=s not parole, then it was probation, but she told me.

Q.  No, no.  You didn=t clarify that.  You specifically said that she was
on parole.  My question is:  Did she tell you that?  That=s all I want, did she tell you
that?

A.  Yes, she told me that.

Q.  Parole?

A.  I am not sure if she told me parole.

Q.  The point is if you=re not sure, why would you suggest
something like parole if you=re not really sure?

A.  Because I didn=t know there was much difference in parole and
probation.

Q.  Parole means you=ve been to the penitentiary and you got out.  That=s what that means.

A.  She told me she was in jail and she got out.

Q.  The penitentiary?

A.  No, she didn=t say penitentiary.  She saidC

Q.  Okay.  That=s what it means.  Parole means you=ve been to the penitentiary.

A.  Okay.

Q.  If you don=t know, why would you say something like that if you=re not sure?

A.  Okay.  Well, I withdraw that statement.  She
told me one of them, I=m not sure which one.

Q.  I mean, you don=t want me to say nothing bad about you if it=s not true, would you?

A.  I didn=t think it was a bad statement.

Q.  If I told somebody, LookCwhat=s your name?

A.  Jocelyn.

Q.  Jocelyn is on parole.  You don=t think that=s bad?

A.  No.  I=m not saying that that=s not bad.  At the time of the conversation, I didn=t feel she was using it in a bad
way and I didn=t accept it in a bad way.

Q.  So it=s all right if it=s not you?








A.  No.  If it=s true, that=s not bad.

At a bench conference later in trial, the trial court noted
appellant=s counsel=s references to
parole during cross-examination, and trial counsel indicated that he had to ask
these questions in order to clear up the fact that the witness was not sure
about this statement and that appellant may have said Aprobation@ instead of Aparole.@  The trial court
stated that appellant=s counsel did not need to ask those
cross-examination questions and that if counsel had objected to the single
reference to parole during the witness=s direct
examination, the trial court would have sustained the objection.  During this
cross-examination, counsel himself mentioned the word Aparole@ six times,
emphasized the witness=s statement that appellant was on parole,
and stated that parole means that you have been to the penitentiary.  While the
witness qualified her statement, stating that she was not sure if appellant
said she was on parole or probation, the witness added a new statementCthat appellant
told her she was in jail and got out.  Counsel=s strategy of
wanting to clear up that the witness was not sure as to whether appellant
indicated she was on parole or probation was not a sound trial strategy under
the circumstances of this case.  Appellant=s trial counsel=s emphasis at the
beginning of cross-examination on appellant=s being in jail
and either on probation or parole fell below an objective standard of
reasonableness, based on prevailing professional norms.  See Hernandez v.
State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986).

The second prong of Strickland requires the
appellant to show prejudice resulting from the deficient performance of his
attorney.  See Hernandez, 988 S.W.2d at 772.  To establish prejudice,
appellant must prove there is a reasonable probability that, but for counsel=s deficient
performance, the result of the proceeding would have been different.  See
Jackson, 973 S.W.2d at 956.  A reasonable probability is a probability
sufficient to undermine confidence in the outcome of the proceedings.@  Id.








While trial counsel=s deficient
performance probably harmed appellant=s credibility with
the jury, the jury already had heard on direct examination that appellant said
she was on parole.  Further, because appellant testified on her own behalf, the
trial court allowed the State to impeach her with a 1995 conviction for
burglary of a motor vehicle.  On the record before us, there is not a
reasonable probability that, but for counsel=s deficient
performance during the cross-examination of the H.E.B. manager, the result of
this proceeding would have been different.  See Jackson, 973 S.W.2d at
956. 

Evidence Appellant was Untruthful

Next, appellant contends that not objecting to Detective
Woods=s testimony
regarding her truthfulness was ineffective representation.  Detective Woods
made a brief statement during direct, and another reference during
cross-examination, that he thought appellant was being untruthful with him during
his investigation.  Otherwise, Woods=s view of
appellant=s truthfulness does not appear to have been raised
before the jury.

 Appellant relies on three cases for her argument that
the failure to object to this testimony equates to ineffective assistance of
counsel.  Weathersby v. State, 627 S.W.2d 729 (Tex. Crim. App.
[panel op.] 1982); Miller v. State, 757 S.W.2d 880 (Tex. App.CDallas 1988, pet.
ref=d); and Garcia
v. State, 712 S.W.2d 249 (Tex. App.CEl Paso 1986, pet.
ref=d).  Appellant
relies on those cases for the basic propositions that a witness may not state
that she believes the defendant is guilty, and she may not comment on the
truthfulness of another witness.  See Weathersby, 627 S.W.2d at 730
(detectives testified that they believed defendant was guilty based on their
review of case files); Miller, 757 S.W.2d at 883 (witness may not give
an opinion concerning the truth or falsity of another witness=s testimony); Garcia,
712 S.W.2d at 251B53 (evidence from witnesses that
complainant was truthful was objectionable and should have been excluded).








Those cases are distinguishable in part or in whole.  The Weathersby
court confronted a situation in which police officers gave their opinion as to
the ultimate issue at trialCguilt of the defendant.  627 S.W.2d at
730.  That did not occur here.  Additionally, in that case there was an
emphasis on the error throughout the trial, ultimately causing prejudice.  In Miller,
the key issue was the complainant=s credibility,
and so evidence bolstering the complainant=s credibility was
prejudicial.  757 S.W.2d at 885.  Here, the State=s case did not
turn solely on the credibility of appellantCthe person whose
credibility was at issue in Detective Woods=s testimonyCrather, the case
turned also on the credibility of the cashier along with other direct testimony
and evidence.  There was no testimony indicating that the cashier was
inherently truthful, as in the cases appellant cites.  Finally, in Garcia,
the court had the benefit of a hearing on a motion for new trial, which we lack
and which hinders our ability to consider adequately trial counsel=s performance.  See
Garcia, 712 S.W.2d at 253.  We are unable to hold that this alleged
error represented ineffective assistance and, if it did, that it caused
prejudice.

Hearsay Testimony

Appellant asserts that her trial counsel was ineffective
when he elicited hearsay testimony from Budgewater regarding what others told
her about the check-writer=s identity.  Specifically, she contends
that Budgewater=s testimony that Acompetent@ witnesses
informed her appellant signed the check bolstered the State=s case.  On this
record, we cannot say this action amounted to ineffective assistance.

As we have stated, the record is silent as to trial
strategy.  These questions were asked in a series related to the manager=s inability to
give personal testimony regarding who wrote the check.  It is arguable that trial
counsel was trying to highlight that Budgewater was not herself present when
the forgery took place.  We simply cannot say, based upon the undeveloped
record before us, that trial counsel=s decision was not
based on sound trial strategy.








Even if trial counsel=s performance were
deficient, we cannot say it caused prejudice.  Budgewater identified appellant
and described her interaction with appellant.  That testimony included
Budgewater=s personal observations that, contrary to appellant=s trial testimony,
appellant was the one wearing pink.  Additionally, the jury had already heard
testimony from the cashier identifying appellant as the forger.  The jury had
already seen a surveillance tape showing appellant, what she was wearing, and
then heard the cashier again identify the person in the videotape as the
forger.  Finally, the jury had already heard testimony and seen the photospread
with which the cashier identified appellant as the forger.  Budgewater=s testimony about
how the cashier described appellant=s clothes was
merely repetitive of other testimony already admitted.  We cannot say that any
alleged error caused prejudice.  

Extraneous Offense Evidence

After the defense rested, the State presented rebuttal
testimony from Detective Randy Crim.  The trial court held a bench conference
prior to Crim=s testimony and ultimately ruled that, because of
appellant=s testimony that she was not the one who forged the
check, she had made identity an issue in the case and the State could present
evidence of a common plan and scheme.  Appellant has not explained to this
court why that ruling was incorrect, or addressed the fact that her trial
counsel sought a ruling from the bench on the testimony before Crim took the
stand.  The record demonstrates that appellant=s trial counsel
asked for a bench conference concerning the admissibility of this evidence, the
trial court ruled it was admissible, and subsequent objections would likely
have been futile. 

Totality of Representation

Appellant asks us to hold that trial counsel was
ineffective based upon the totality of his representation, even if the
individual events do not rise to that level on their own.  See Weathersby,
627 S.W.2d at 730.  However, even viewed as a whole, we cannot agree with
appellant.  First, the undeveloped record hinders our ability to hold that
counsel=s various acts and
omissions were not based on sound trial strategy.  Second, the alleged errors
were not prejudicial.  The State presented ample direct, positive evidence of
appellant=s guilt.  None of the alleged problems appellant
highlights went to the heart of the State=s case.  Rather,
the evidence of guilt was based on eye-witness testimony, whose admissibility
has not been questioned.  We simply cannot hold that the result would have been
different.  See Jackson, 973 S.W.2d at 956.  We overrule appellant=s first point of
error.








II.       Jury
Charge

In her second point of error, appellant complains that the trial
court erred in submitting a charge to the jury on the law of parties. 
Specifically, she argues the State failed to introduce evidence that would
entitle it to a charge on the law of parties because no evidence sufficiently
proved appellant played a role in the commission of the offense.

Under
Texas law, A[a] person is criminally responsible for an offense
committed by the conduct of another if . . . acting with intent to promote or
assist the commission of the offense, he solicits, encourages, directs, aids,
or attempts to aid the other person to commit the offense.@  Tex. Pen. Code Ann. '7.02(a)(2) (Vernon
2003).  In determining
whether a parties charge is proper, i.e., supported by the evidence, the
trial court may look to events occurring before, during, and after the
commission of the offense, and may rely on appellant=s actions which show an understanding
and common design to do the prohibited act.  Ransom v. State, 920 S.W.2d 288,
302 (Tex. Crim. App. 1994) (quoting Cordova v. State, 698 S.W.2d 107,
111 (Tex. Crim. App. 1985)); Beier v. State, 687 S.W.2d 2, 4 (Tex. Crim. App. 1985).  The fundamental
test, as set forth by the Texas Court of Criminal Appeals, is as follows:

Where the evidence introduced upon the trial of the cause shows the
active participation in the offense by two or more persons, the trial court
should first remove from consideration the acts and conduct of the non‑defendant
actor. Then, if the evidence of the conduct of the defendant then on trial
would be sufficient in and of itself, to sustain the conviction, no submission
of the law of [parties] is required . . . . 

On the other
hand, if the evidence introduced upon the trial of the cause shows, or
raises an issue, that the conduct of the defendant then upon trial is not
sufficient, in and of itself, to sustain a conviction, the State=s case rests upon the law of
[parties] and is dependent, at least in part, upon the conduct of another. In
such a case, the law of parties must be submitted and made applicable to the
facts of the case. 








McCuin v. State, 505 S.W.2d 827, 830 (Tex. Crim.
App. 1974) (emphasis added); see also Brown v. State, 716 S.W.2d 939,
944 (Tex. Crim. App. 1986) (citing the McCuin test as the proper means
for determining when a case should be submitted to the jury on a law of parties
theory).

Here,
the evidence adduced at trial raises an issue as to the active participation by
appellant and her friend.  Appellant claimed that her friend actually wrote the
check, forged Livermore=s name, and produced Livermore=s driver=s license. 
Appellant also argued that she gave Griggs, the H.E.B. cashier, money for the
snack food items but said the cashier did not accept the money because she
accidentally included the items on her friend=s bill. 
Furthermore, appellant suggested at trial that she was not the person who wore
the distinctive pink outfit or who spoke with Griggs in an effort to distract
her.  Instead, appellant claimed that it was her friend who was actually
dressed in pink and who spoke with Griggs.  Therefore, she argues Griggs was
mistaken as to the identity of the person who actually wrote the check. 
Ultimately, appellant concludes that her friend was the primary actor and that
appellant was not involved in, or criminally responsible for, the forgery.








However, the State=s theory at trial
was that appellant was the primary actor.  The State elicited testimony that
appellant was the person who forged the check and that appellant was the one
who wore the pink outfit.  The State also presented ample evidence to prove
appellant was present at the scene,[4]
entered and exited the grocery store with her friend, stood in the check-out
line while the check was being written, attempted to distract the cashier by
conversing with her about unrelated matters, had her items purchased with the
forged check, and fled the scene by driving away when store employees
approached the two women about the check.[5] 
These are all
circumstances that may be used to prove appellant was a party to the forgery.  See Ransom, 920 S.W.2d at
302 (explaining that party status may be proved by circumstantial evidence).  At a minimum, these circumstances
support the trial court=s decision to include a jury instruction
on the law of parties.  See Goff v. State, 931 S.W.2d 537, 545 (Tex.
Crim. App. 1996) (upholding a law-of-parties instruction even though the defendant=s theory that he
was not the primary actor was best supported by the evidence).  Because the
evidence sufficiently raised an issue regarding appellant=s role in the
offense, the State was entitled to submitCand the trial
court did not err in providingCa jury instruction on the law of parties. 
Accordingly, we overrule appellant=s second point of
error.

The judgment of the trial court is affirmed.

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion on Remand filed March 1, 2007.

Panel consists of
Justices Anderson, Hudson, and Frost.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  Specifically, appellant purchased three H.E.B. gift cards for $100 each
and some snack food and also wrote the check for $25 over the total bill to
receive cash back.  Therefore, the check was written for a total of $326.89.





[2]  Based on testimony presented at trial, it appears
Livermore=s photograph was replaced with appellant=s photograph on the license.





[3]  The two women were quite distracting in other regards as well.  Appellant
wore a Aloud,@ distinctive pink outfit and a hat and her friend
donned a memorable white outfit and hat.  Also, the two women stood at the end
of the check-out Abelt@ for some time
before proceeding with their purchaseCconduct
Griggs found unusual.





[4]  While mere presence at the scene of the offense does
not establish guilt as a party to the offense, it is a circumstance that can be
taken into account in ascertaining whether a charge on the law of parties is
warranted.  Keller v. State, 606 S.W.2d 931, 933 (Tex. Crim. App. 1980);
see also Valdez v. State, 623 S.W.2d 317, 321 (Tex. Crim. App. 1979). 





[5]  Evidence of flight from the scene of the offense is
a circumstance from which an inference of guilt may be drawn.  Valdez,
623 S.W.2d at 321.