

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-22-00160-CR

———————————————————

KENNETH RAY ROSS, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 213th District Court
Tarrant County, Texas
Trial Court No. 1615307D

Before Sudderth, C.J.; Birdwell and Womack, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

## I. INTRODUCTION

A jury convicted Appellant Kenneth Ray Ross of aggravated sexual assault of a child—his niece, T.W. (Taylor)[1]—and the trial court sentenced him to life imprisonment. *See* Tex. Penal Code Ann. § 22.021(a)(2)(B). In his sole issue on appeal, Ross argues that he received ineffective assistance of counsel during the guilt–innocence phase of his trial when his counsel failed to object to and seek the exclusion of testimony from a detective that Taylor's allegations were truthful. Because we will hold that Ross has not established that his trial counsel's performance was deficient, we will affirm.

## II. BACKGROUND

In 2019, police were called to the home of Ross's mother, D.R. (Deloris), where an argument was taking place between family members. The family members taking part in the argument included: (1) Deloris—the matriarch of the family; (2) Ross—Deloris's son; (3) D.S. (Donna)—Deloris's daughter and Ross's younger sister; and (4) Taylor—Deloris's granddaughter, Ross's niece, and Donna's daughter. The argument appears to have started between Ross and Taylor over a missing basketball goal. According to Donna, the argument escalated when Deloris called

---

[1]To protect the complainant's anonymity, we use an alias to refer to her and to some of her family members. *See McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

Taylor—who suffers from cerebral palsy—a "black crippled bitch." Eventually, Taylor called the police because, according to her, Ross was being "very . . . aggressive" and she wanted to prevent Ross and Donna "from physically fighting."

After police arrived, both Taylor and Donna reported that they had each been sexually assaulted by Ross when they were children. Taylor explained that she had told police about the abuse because she thought they needed to know "the back story . . . so they would understand the dynamic of the situation."[2] Taylor and Donna later met with Detective Brandi Howard of the Mansfield Police Department, where they recounted their allegations of sexual abuse. Ross was ultimately indicted for aggravated sexual assault for his abuse of Taylor when she was a child.

At Ross's trial, Taylor testified that she had moved into Deloris's home around 1995, when Taylor was approximately eleven years old.[3] Initially, only Deloris, Taylor,

---

[2]According to Taylor, police also responded to arguments involving Taylor and Ross in or around 2005 and 2016—occasions when Ross was allegedly being "aggressive" toward her. Taylor maintains that she told responding officers in 2005 and 2016 that Ross had sexually assaulted her as a child but that she had declined to press charges on those occasions. When asked at trial why she had told the police about the abuse but declined to press charges, Taylor reiterated that she "felt like they needed to know the back story of why it led up to [her] calling the police. So they could get a better understanding of the family dynamic and what was going on when it came to [Ross] and [her]."

[3]Taylor explained that she had moved in with Deloris because her mother, Donna, "was on the wrong path" and was unable to take care of her. At Ross's trial, Donna testified that she had been sexually assaulted by Ross in or around 1976, when she was approximately eight years old, and Ross was approximately sixteen. Because

Taylor's younger brother, and Deloris's common-law husband lived in the house. Within a year, however, Ross had also moved into the house with his wife and son.

Taylor testified that Ross had sexually assaulted her on several occasions at Deloris's home, with the abuse starting in 1995 and continuing "[f]or a good year to two years." She explained that these instances followed the same pattern each time and would occur when Ross was the only adult in the house. She testified that Ross would instruct his son and her brother to go outside, that he would make her put on a certain dress once the boys were outside, that he would instruct her to come to his bed, that he would take her underwear off, and that he would kiss her and try to insert his penis inside her vagina.[4] Taylor stated that she had wanted to report the abuse as a child but that she was afraid that reporting it would cause her to be separated from her younger brother.[5]

Apart from Taylor's testimony, the jury also heard testimony from Donna, Deloris, Detective Howard, and a director of program services for a children's advocacy center. Of note, during Detective Howard's testimony, the detective

---

it is not pertinent to our analysis, we need not detail the allegations of Ross's sexual abuse of Donna. *See* Tex. R. App. P. 47.1.

[4]While Taylor stated that Ross had never been able to "fully insert his penis into [her] vagina," she maintained that his penis had contacted her vagina.

[5]Taylor testified that Ross had told her that either nobody would believe her report of abuse or that she and her brother would end up with Child Protective Services and that her brother would be adopted but that she would not be adopted due to her cerebral palsy.

4

testified—with no objection being raised—that she believed that Taylor's outcry "was reasonable and truthful with a lot of sensory details that [she] thought were prudent to [Taylor] being a victim of sexual assault as a child."

After considering the evidence, the jury found Ross guilty of aggravated sexual assault of a child. Ross elected to have the trial court assess his punishment, and the trial court sentenced him to life imprisonment. This appeal followed.

### III. DISCUSSION

In his sole issue, Ross argues that he received ineffective assistance of counsel during the guilt–innocence phase of his trial when his counsel failed to object to and seek the exclusion of Detective Howard's testimony that Taylor's allegations were "truthful."

## A. Standard of Review and Applicable Law

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel. *Ex parte Scott*, 541 S.W.3d 104, 114 (Tex. Crim. App. 2017); *see* U.S. Const. amend. VI. To establish ineffective assistance, an appellant must prove by a preponderance of the evidence that his counsel's representation was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). The record must affirmatively demonstrate that the claim has merit. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

In evaluating counsel's effectiveness under the deficient-performance prong, we review the totality of the representation and the particular circumstances of the case to determine whether counsel provided reasonable assistance under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065; *Nava*, 415 S.W.3d at 307; *Thompson*, 9 S.W.3d at 813–14. Our review of counsel's representation is highly deferential, and we indulge a strong presumption that counsel's conduct was not deficient. *Nava*, 415 S.W.3d at 307–08.

A court of appeals may not infer ineffective assistance merely from an unclear record or a record that does not show why counsel failed to do something. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012); *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Indeed, trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593. If trial counsel did not have such an opportunity, we should not conclude that counsel's performance was deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Nava*, 415 S.W.3d at 308. Direct appeal is usually inadequate for raising an ineffective-assistance-of-counsel claim because the record generally does not show counsel's reasons for any alleged deficient performance. *See Menefield*, 363 S.W.3d at 592–93; *Thompson*, 9 S.W.3d at 813–14.

6

## B. The Complained-Of Testimony

Ross's complaint of ineffective assistance of counsel is based on his trial counsel's failure to object to or seek the exclusion of testimony regarding the following exchange between the State and Detective Howard at trial:

Q. And so, Detective, you work these cases every day. When an allegation comes in of sexual abuse do you just write a warrant every time one of these allegations comes in?

A. No, I don't.

Q. In this case did you write a warrant?

A. I did, yes.

Q. Is that because you believed you had probable cause to arrest Mr. Ross for this offense?

A. I believe the victim's outcry was reasonable and truthful with a lot of sensory details that I thought were prudent to her being a victim of sexual assault as a child.

Following that exchange, the State passed the witness, and Ross's trial counsel cross-examined Detective Howard. Notably, Ross did not file a motion for new trial, nor did he request a hearing to develop the record regarding his ineffective-assistance-of-counsel claim.

## C. Analysis

Ross cites four cases—*Fuller v. State*, 224 S.W.3d 823 (Tex. App.—Texarkana 2007, no pet.); *Sessums v. State*, 129 S.W.3d 242 (Tex. App.—Texarkana 2004, pet. ref'd); *Miller v. State*, 757 S.W.2d 880 (Tex. App.—Dallas 1988, pet. ref'd); and *Garcia v.*

*State*, 712 S.W.2d 249 (Tex. App.—El Paso 1986, pet. ref'd)—to support his argument that his trial counsel was ineffective for failing to object to or seek the exclusion of Detective Howard's testimony that Taylor's allegations were "truthful." Those cases are distinguishable.

In *Fuller*, the defendant was convicted of sexual assault of a child and indecency with a child. 224 S.W.3d at 826. At the defendant's trial, the State asked multiple witnesses—the complainant's mother, a police officer, and a forensic interviewer for a children's advocacy center—whether they believed the complainant was being truthful with respect to her sexual-assault allegations. *Id.* at 833–35. Each witness responded that they thought the complainant was truthful or credible. *Id.* On appeal, the defendant raised a complaint of ineffective assistance of counsel, contending that his trial counsel "was ineffective by not objecting to the State's 'bolstering' of [the complainant's] truthfulness and credibility." *Id.* at 832. After considering the issue, the Texarkana Court of Appeals held that "this is one of those rare cases in which the record on direct appeal is sufficient to decide counsel had no plausible trial strategy for not objecting to the inadmissible testimony and that his conduct was deficient." *Id.* Accordingly, the court of appeals reversed the judgment and remanded the case for a new trial. *Id.* at 837.

In *Sessums*, the defendant was convicted of aggravated sexual assault of a child and indecency with a child. 129 S.W.3d at 244. At his trial, four expert witnesses "were asked to explain and then to comment directly on the factors they used in

8

determining if [the complainant] was telling the truth." *Id.* at 248. During closing arguments, the State "specifically discussed (without objection) that the [complainant] must not be a liar, because he was able to convince all four of these experts he was telling the truth." *Id.* On appeal, the defendant raised a complaint of ineffective assistance of counsel. *Id.* at 246. In reversing the defendant's conviction and remanding the case for a new trial, the Texarkana Court of Appeals held that "[t]here is no conceivable strategy or tactic that would justify allowing this testimony in front of a jury." *Id.* at 248.

In *Miller*, the defendant was convicted of aggravated sexual assault. 757 S.W.2d at 880. At his trial, the State asked several questions of witnesses regarding the truthfulness of the complainant's sexual-assault allegation. *Id.* at 881–883. It asked a doctor who had examined the complainant his opinion regarding whether the complainant had been sexually abused, it asked the complainant's mother whether she thought he was lying with respect to the sexual-assault allegation, and it asked a counselor whether she had an opinion on whether the complainant had been sexually abused. *Id.* On appeal, the defendant raised a complaint of ineffective assistance of counsel. *Id.* at 880. After analyzing the issue, the Dallas Court of Appeals held that it could "glean no sound trial strategy in defense counsel's failure to object to the extensive, inadmissible testimony concerning the only real issue at trial— complainant's credibility." *Id.* at 884. Accordingly, the court of appeals reversed the trial court's judgment and remanded the case for a new trial. *Id.* at 885.

Finally, in *Garcia*, the defendant was convicted of burglary of a habitation with intent to commit the crime of indecency with a child. 712 S.W.2d at 251. At the defendant's trial, a detective and a social worker each testified "with regard to their opinions as to the truthfulness of the testimony of the complaining witnesses." *Id.* at 253. The detective in that case was specifically asked whether it was his impression that the complainant had been sexually abused. *Id.* at 251. On appeal, the defendant raised a complaint of ineffective assistance of counsel. *Id.* at 253. In reversing the defendant's conviction and remanding the case for a new trial, the El Paso Court of Appeals held that the defendant's counsel was deficient by not objecting to the detective's and social worker's respective testimony regarding the truthfulness of the complaining witnesses. *Id.*

In the four cases cited by Ross, the State asked questions designed to elicit testimony regarding the truthfulness of the complainants' respective sexual-assault allegations. *See Fuller*, 224 S.W.3d at 833–35; *Sessums*, 129 S.W.3d at 248; *Miller*, 757 S.W.2d at 881–883; *Garcia*, 712 S.W.2d at 251, 253. Here, in contrast, the State did not ask Detective Howard to opine on Taylor's truthfulness; rather, Detective Howard was asked whether she had had probable cause to arrest Ross, and in answering that question, Detective Howard volunteered that Taylor's outcry was "reasonable and truthful." Moreover, in the four cases cited by Ross, there was repeated testimony from multiple witnesses regarding the truthfulness of the complainants' respective sexual-assault allegations. *See Fuller*, 224 S.W.3d at 833–35;

10

*Sessums*, 129 S.W.3d at 248; *Miller*, 757 S.W.2d at 881–883; *Garcia*, 712 S.W.2d at 251, 253. Here, in contrast, Ross's complaint relates to only one instance of improper testimony from one witness. *See Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984) ("An isolated failure to object to certain procedural mistakes or improper evidence does not constitute ineffective assistance of counsel."); *Alberts v. State*, 302 S.W.3d 495, 507 (Tex. App.—Texarkana 2009, no pet.) (noting that "an isolated failure to object to improper evidence does not constitute ineffective assistance of counsel" and distinguishing *Fuller*, a case where the references to the complainant's truthfulness "were not isolated incidents").

The circumstances presented here more closely resemble the circumstances presented in *Herrera v. State*, No. 01-08-00615-CR, 2009 WL 1813093 (Tex. App.—Houston [1st Dist.] June 25, 2009, no pet.) (mem. op., not designated for publication). There, the defendant was convicted of aggravated sexual assault of a child. *Id.* at *1. At the defendant's trial, a detective was asked whether the complainant's responses to the detective's questions were consistent with someone who had been sexually assaulted. *Id.* at *5. The detective responded, "Well, it's hard to say consistent because everybody is different; but I can say I had absolutely no reason to doubt the things [the complainant] was telling me were true." *Id.*

On appeal, the defendant cited *Fuller* to suggest that his counsel rendered ineffective assistance by not objecting to the detective's testimony regarding the complainant's truthfulness. *Id.* at *6. The First District Court of Appeals found *Fuller*

11

to be distinguishable, noting that "[t]he difference between this case and *Fuller* . . . lies not with each witness's answer, but with the question that elicited it." *Id.* The court of appeals noted that the State's question as to whether the complainant's responses were consistent with someone who had been sexually assaulted sought permissible testimony. *Id.* The court further reasoned, "Given that the question itself was not objectionable, and the witness's response was brief and occurred only in passing, [the defendant's] trial counsel could have reasonably concluded that an objection would have highlighted the unsolicited testimony to his client's detriment." *Id.* As such, the court of appeals held that the defendant's trial counsel had not been ineffective. *Id.*

Just as the prosecutor's question in *Herrera* that led to the complained-of testimony did not seek to elicit testimony regarding the truthfulness of the complainant's allegations, here, the State's question that led to the complained-of testimony—whether Detective Howard had probable cause to arrest Ross—was not a question seeking an answer regarding Taylor's truthfulness. Moreover, just as the witness's response in *Herrera* "was brief and occurred only in passing," here, Detective Howard's response was brief and isolated to that one occurrence. *Id.* Ross's trial counsel, like the trial counsel in *Herrera*, may have "reasonably concluded that an objection would have highlighted the unsolicited testimony to his client's detriment." *Id.*; *see Weatherly v. State*, 283 S.W.3d 481, 487 (Tex. App.—Beaumont 2009, no pet.) (rejecting ineffective-assistance-of-counsel complaint where counsel explained that he had not objected to complained-of testimony because "he did not want to call

12

attention to the damaging testimony"). Thus, based on the silent record before us, we cannot conclude that Ross's trial counsel's failure to object to or exclude Detective Howard's testimony was deficient. *See Wurtz v. State*, No. 02-22-00010-CR, 2022 WL 17841128, at *4 (Tex. App.—Fort Worth Dec. 22, 2022, no pet.) (mem. op., not designated for publication) ("And the record, such as it is, does not allow us to conclude that the challenged conduct was so outrageous that no competent attorney would have engaged in it."); *Brantley v. State*, No. 02-19-00349-CR, 2021 WL 3679239, at *4 (Tex. App.—Fort Worth Aug. 19, 2021, pet. ref'd) (mem. op., not designated for publication) ("Ultimately though, we may not speculate regarding why trial counsel acted as he did and must presume that a reasonable trial strategy supported his conduct."). We overrule Ross's sole issue.

## IV. CONCLUSION

Having overruled Ross's sole issue, we affirm the trial court's judgment.

/s/Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: June 29, 2023

13