Affirmed and Opinion filed May 20, 2008








Affirmed and Opinion filed May 20, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00133-CR

____________

 

FREDERICK LANE, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 180th
District Court

Harris County, Texas

Trial Court Cause No. 1066435

 



 

O P I N I O N

Appellant, Frederick Lane, was found guilty by a jury of
aggravated sexual assault of a child under the age of fourteen.  See Tex.
Pen. Code Ann. ' 22.021 (Vernon 2003). 
The jury sentenced appellant to sixty years= confinement in
the Institutional Division of the Texas Department of Criminal Justice.  In a
single issue on appeal, appellant contends he received ineffective assistance
of counsel.  We affirm.








Factual and Procedural Background

Appellant does not question the sufficiency of the evidence
to support the jury=s verdict.  Therefore, we will only
discuss the facts as they relate to appellant=s complaint on
appeal.

Appellant is the father of complainant E.A.=s half-brother,
and he lived with E.A.=s family during the time she was five to
eight years old.  E.A. testified appellant sexually assaulted her both during
the night and during the day before she would leave for school.  According to
E.A., appellant forced her to perform oral sex on him and penetrated her anus
with his penis.  E.A. testified that when appellant assaulted her during the
night, he first would shake her awake in her bed; grab her by the arm; and lead
her to the bathroom down the hall from her bedroom.  E.A. testified appellant
would then sexually assault her in the bathroom before sending her back to
bed.  E.A. testified appellant sexually assaulted her both during the night and
during the day before she would leave for school.  E.A. also testified
appellant threatened to kill her family if she told anyone about the abuse.  E.A.
feared appellant, even after he left E.A.=s house.  E.A.
told no one about the abuse until she was eighteen years old.  E.A. came
forward to report the alleged sexual assaults only after she learned appellant
had a daughter of his own.  Since reporting the sexual assaults, E.A. has been
diagnosed with post-traumatic stress disorder and undergoes weekly therapy.  At
the time of appellant=s trial, E.A. was twenty-four years old.








Significant portions of E.A.=s testimony were
corroborated by eyewitness testimony from her sister, N.A, who is five years
older than E.A.  During the guilt/innocence phase of the trial, N.A. testified
that during the time period when appellant lived in their house, she slept in
the same bed with E.A.  N.A. testified she remembered appellant waking up E.A.
in bed late at night after everyone else was asleep, telling E.A. to get up and
follow him, and leading E.A. to the bathroom down the hall.  N.A. testified she
saw appellant go into the bathroom with E.A.  N.A. testified this happened Alike, every other
night.@  N.A. pretended
to be asleep when appellant came in the bedroom to get E.A, but she would
remain awake until E.A. returned to bed.  N.A. never asked E.A. what happened
in the bathroom because N.A. was scared.

E.A. testified appellant is not wealthy; she has no plans
to file a civil suit against him; and there are no child custody or divorce
proceedings between appellant and E.A.=s mother involving
E.A.=s half-brother. 
N.A. testified neither she nor her family knew of any motive  E.A. might have
to testify against appellant aside from the sexual assaults.  Appellant does
not contend on appeal this testimony was inadmissible, or that defense counsel
should have objected to it.

During appellant=s trial, the State
also called Dr. Lawrence Thompson, Jr., the director of therapy and
psychological services for the Children=s Assessment
Center in Houston, to testify as an expert in the field of child abuse and
post-traumatic stress disorder.  According to Dr. Thompson, there is a delay in
disclosure in over half of all cases of child sexual abuse.  Dr. Thompson
testified the delay can be anywhere from weeks to years between the abuse and
the child victim reporting the abuse.  In addition, Dr. Thompson testified
there are many reasons for the delayed outcry, including the child=s feelings of
guilt and shame, manipulation or threats by the perpetrator to harm the child
or the child=s family, and the child=s fear the report
of abuse will not be believed.  Dr. Thompson also testified regarding false
allegations of child abuse.  During his testimony, the following exchange
occurred:

[Prosecutor] Q:      How about
false allegations?  Is that a big part of the studies regarding sexual abuse?

[Dr. Thompson] A:  No, it=s not a big, big part.  It is
something that happens.  There are false allegations of child sexual abuse, but
what I can tell you from the research and my clinical experience is that those
allegations are extremely rare.

[Defense Counsel]: Judge, I object
to that as interjecting the credibility to a group of people.

The Court:             Sustained.








[Prosecutor] Q:      Is this based
on your training and experience in general, that is, the study of or the
looking at the false accusations, is that something that you have done through
your education and through your training and through your experience?

[Dr. Thompson] A:  I have
definitely observed all areas of child sexual abuse, including false
allegations.

[Prosecutor] Q:      And so how do
you go about separating in a general way scientifically between a true
allegation and a false allegation?

[Dr. Thompson] A:  Well, in the
false allegation abuse that I in my clinical experience has [sic] observed --
have observed, the theme that was present in that was an adult coercing a child
to say something happened that didn=t happen.  Coaching is what it is referred to in the
literature.  So we have an adult coaching a child to say they were abused when
they were not abused.

And, again, it is a rare occurrence, but it is something that is
documented in the literature and coaching of children has unfortunately
happened, but it is a rare occurrence.

          While
appellant=s trial counsel lodged an objection to Dr. Thompson=s testimony, which
the trial court sustained, he did not request an instruction to the jury to
disregard or move for a mistrial.  In addition, even though the trial court
sustained his objection to Dr. Thompson=s initial
testimony on the relative rarity of false testimony of childhood sexual
assault, appellant=s trial counsel did not object when Dr.
Thompson continued testifying to that effect.  Then, during his
cross-examination of Dr. Thompson, appellant=s trial counsel
revisited the issue of false testimony when he asked:

[Defense Counsel]: Okay. You
indicated -- you=ve indicated that the majority of
false allegations involve an adult coaching a child?

[Dr. Thompson]:     Yes.  Yes, in
my clinical experience and in the literature. 

* * *








[Defense Counsel]: Have there been
studies done to determine, give us any information, any data, about adults
making false accusations and claiming that they were the victim?

[Dr. Thompson]:     No, there are
no studies that I am aware of specific to that, but the general studies that I
am aware of regarding all victims of child sexual abuse, adult or child,
consistently show that child or adult do not make - - tend to make false
allegations of child sexual abuse.

[Defense Counsel]: Your Honor, I
would object to that as being unresponsive and attributing credibility to a
group of people, which includes the complainant in this case.

The Court:             Listen to
the question and answer the question asked, please.

While
appellant=s trial counsel objected to Dr. Thompson=s testimony as
non-responsive, he did not obtain a ruling from the trial court on his
objection.

The State also called Myrna Engler, a social worker who
counsels abuse victims, including E.A., at the Children=s Assessment
Center.  Ms. Engler had counseled E.A. on a weekly basis for fourteen weeks at
the time of appellant=s trial.  Ms. Engler testified that, in
her opinion formed after counseling E.A. for those fourteen sessions, E.A. had
post-traumatic stress disorder caused by childhood sexual abuse.  Appellant=s trial counsel
did not object to this testimony.

During the State=s closing
argument, the State=s prosecutor emphasized the testimony of
Dr. Thompson and Ms. Engler:








[Prosecutor]:                   Also,
the experts, not only do they have all this training and experience and
education that we usually don=t have, in our case here you have Ms. Engler who actually spent 14
hours with the victim, not just the time we spent with her, but every week,
hour after hour after hour.  And that could help you, if it does, decide
whether or not [the complainant] is a credible person.  That=s why the experts brought to you
and we talked about experts and everybody said that they can keep an open mind
and listen to experts.

* * *   

[Prosecutor]:                   We
learned from the expert that fabrications on sexual assault is extremely rare
based on the paper, the studies, and the research.  That=s what the experts tell you and
that=s what they testify to.  It is
extremely rare that somebody would come up and just make an allegation like
that.

When you think of an allegation like that, though, what=s the first thing you do, like I
talked about earlier?  The credibility of the witness.  Well, what=s going on?  Is the allegation
being made because it is true or is there some other reason?

 The jury found appellant guilty of aggravated sexual
assault of a child and assessed appellant=s punishment at
sixty years= confinement.  This appeal followed.

Discussion

In a single issue on appeal, appellant contends he received
ineffective assistance of counsel because his trial counsel failed to (1)
properly challenge and exclude Dr. Thompson=s testimony
regarding false allegations of sexual assault by children; and (2) lodge any
objection to Ms. Engler=s testimony that E.A. had post-traumatic
stress disorder caused by childhood sexual abuse.  Appellant=s trial counsel
filed a motion for new trial; however, the motion did not raise ineffective
assistance of counsel as a basis for the trial court to grant him a new trial.

I.        The
Standard of Review








In reviewing claims of ineffective assistance of counsel,
we apply a two-prong test.  See Salinas v. State, 163 S.W.3d 734, 740
(Tex. Crim. App. 2005) (citing Strickland v. Washington, 466 U.S. 668,
687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984)).  To establish ineffective
assistance of counsel, appellant must prove by a preponderance of the evidence
that (1) his trial counsel=s representation was deficient in that it
fell below the standard of prevailing professional norms, and (2) there is a
reasonable probability that, but for counsel=s deficiency, the
result of the trial would have been different. Id.  








An accused is entitled to reasonably effective assistance
of counsel.  King v. State, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983). 
When evaluating a claim of ineffective assistance, the appellate court looks to
the totality of the representation and the particular circumstances of each
case.  Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). 
There is a strong presumption that counsel=s actions and
decisions were reasonably professional and were motivated by sound trial
strategy.  Salinas, 163 S.W.3d at 740; Stults v. State, 23 S.W.3d
198, 208 (Tex. App.CHouston [14th Dist.] 2000, pet. ref=d).  To overcome
the presumption of reasonable professional assistance, Aany allegation of
ineffectiveness must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness.@ Thompson,
9 S.W.3d at 814.  When determining the validity of an ineffective assistance of
counsel claim, any judicial review must be highly deferential to trial counsel
and avoid the deleterious effects of hindsight.  Ingham v. State, 679
S.W.2d 503, 509 (Tex. Crim. App. 1984).  When the record is silent as to the
reasons for counsel=s conduct, a finding that counsel was
ineffective would normally require impermissible speculation by the appellate
court. Stults, 23 S.W.3d at 208. Absent specific explanations for
counsel=s decisions, a
record on direct appeal will rarely contain sufficient information to evaluate
an ineffective assistance claim.  Bone v. State, 77 S.W.3d 828, 833
(Tex. Crim. App. 2002).  However, when no reasonable trial strategy could
justify trial counsel=s conduct, counsel=s performance
falls below an objective standard of reasonableness as a matter of law,
regardless of whether the record adequately reflects trial counsel=s subjective
reasons for acting as he did.  Andrews v. State, 159 S.W.3d 98, 102
(Tex. Crim. App. 2005).  If a criminal defendant can prove trial counsel=s performance was
deficient, he must still affirmatively prove he was prejudiced by counsel=s actions.  Thompson,
9 S.W.3d at 812.  This requires the defendant to demonstrate a reasonable
probability that the result of the proceeding would have been different if
trial counsel had acted professionally.  Id.  A reasonable probability
is a probability sufficient to undermine confidence in the outcome.  Mallett
v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).

II.       Did
Appellant Receive Ineffective Assistance of Counsel?

A.      Was Trial
Counsel=s Performance Deficient?

Appellant claims he received ineffective assistance of
counsel, in part, because his trial counsel failed to properly challenge and
exclude Dr. Thompson=s testimony regarding the rarity of false
allegations of sexual assault by children.  Appellant also complains of his
trial counsel=s failure to lodge any objection to the testimony of
Ms. Engler regarding her opinion E.A. had post-traumatic stress disorder caused
by childhood sexual abuse.  According to appellant, both experts= testimony was
inadmissible because it constituted opinion testimony on complainant=s truthfulness. 
Because there can be no plausible trial strategy for failing to properly
challenge Dr. Thompson=s testimony or failing to lodge any
objection to Ms. Engler=s testimony, we agree with appellant this
is a case in which the record on direct appeal is sufficient to decide whether
appellant=s trial counsel=s performance was
deficient. 








Because it is jurors who must decide the credibility of the
parties in issue, expert opinions on the truthfulness of a child complainant=s allegation or
that a class of persons the complainant belongs to is truthful, are
prohibited.  Yount v. State, 872 S.W.2d 706, 708, 710B12 (Tex. Crim.
App. 1993).  Dr. Thompson=s testimony that false accusations of
childhood sexual assault are very rare had the effect of telling the jury they
could believe E.A.=s testimony, which is expressly
forbidden.  Id. at 711.  In addition, Ms. Engler=s testimony she
counseled complainant for fourteen weeks and determined E.A. had been sexually
assaulted was direct testimony the complainant was truthful, which is also
prohibited.  Id.

The fact appellant=s trial counsel
lodged an objection to Dr. Thompson=s testimony
indicates he was aware this testimony was inadmissible.[1] 
However, once the trial court sustained the objection, appellant=s trial counsel
failed to take the required next step to preserve appellate review by moving to
instruct the jury to disregard the improper testimony.  Young v. State,
137 S.W.3d 65, 69B70 (Tex. Crim. App. 2007).  In addition,
by failing to lodge any objection to Dr. Thompson=s subsequent
testimony and the testimony of Ms. Engler, appellant was precluded from
appellate review of that testimony.  Id.  Even though there is nothing
in the record on appeal explaining appellant=s trial counsel=s subjective trial
strategy for allowing this testimony into evidence, there is no conceivable
strategy or tactic that would justify allowing this inadmissible testimony in
front of the jury.  Fuller v. State, 224 S.W.3d 823, 836 (Tex. App.CTexarkana 2007, no
pet.); Sessums v. State, 129 S.W.3d 242, 248 (Tex. App.CTexarkana 2004,
pet. ref=d); Miller v.
State, 757 S.W.2d 880, 884 (Tex. App.CDallas 1988, pet.
ref=d).  Accordingly,
we determine appellant=s trial counsel=s performance was
deficient.

In their response brief, the State cites Schutz v. State,
957 S.W.2d 52, 59 (Tex. Crim. App. 1997), and Wright v. State, 223
S.W.3d 36, 44 (Tex. App.CHouston [1st Dist.] 2006, pet. ref=d), for the
proposition that Dr. Thompson=s testimony regarding false testimony was
admissible as long as he did not directly comment on E.A.=s truthfulness. 
We disagree these cases stand for the proposition that an expert witness can
testify that a person or class of persons is truthful.








In Schutz, the Court of Criminal Appeals, after
determining the defendant=s trial counsel rendered deficient
performance, reversed and remanded the case to the court of appeals to conduct
a harmless error analysis.  Schutz, 957 S.W.2d at 74.  While the Court
of Criminal Appeals did state expert testimony does not assist the jury if it
constitutes a direct opinion on the truthfulness of a child complainant=s allegations, it
did not hold expert testimony on the truthfulness of a class of people the
complainant belongs to is admissible.  Id. at 59.  Instead, the Court of
Criminal Appeals held expert testimony on the capability of a group considered
legally impaired, such as young children, to distinguish reality from fantasy,
and to perceive, remember, and relate the kinds of events at issue in the case,
is admissible as long as it does not focus on the individual witness.  Id. at
70.  Neither Dr. Thompson=s nor Ms. Engler=s testimony
addressed the ability of an impaired class to perceive and remember the type of
events underlying this case and therefore Schutz does not support the
State=s position.

In Wright, the court of appeals determined the
defendant received ineffective assistance of counsel based on trial counsel=s failure to make
a reasonable investigation of the defendant=s case.  Wright,
223 S.W.3d at 44B45.  In dicta, the court of appeals stated
expert testimony regarding false allegations of sexual assault occurring after
a divorce and the accepted protocols for interviewing suspected child sexual
assault victims would have been admissible as long as the expert did not
comment on the truthfulness of the complainant.  Id. at 44.  However,
even if Wright represented binding authority on this court, it is
factually distinguishable as our case does not involve a child complainant
whose parents are engaged in a divorce, but instead involves an adult
complainant who alleged she was sexually assaulted as a child.

B.      Was
Appellant Prejudiced By Trial Counsel=s Deficient
Performance?








Having determined appellant=s trial counsel=s performance was
deficient, we must decide if, as a result of that deficient performance, there
is a reasonable probability that, but for counsel=s deficient
performance, the result of the trial would have been different.  Salinas,
163 S.W.3d at 740.  In other words, we must determine whether there is a
probability sufficient to undermine confidence in the outcome.  Miller,
757 S.W.2d at 884.

The facts of this case distinguish it from the cases cited
by appellant in support of his argument he was prejudiced by his trial counsel=s deficient
performance.  In each of appellant=s cases, there was
no eyewitness testimony corroborating the victim=s testimony that
he or she had been sexually assaulted.  See Fuller, 224 S.W.3d at 837 (AThis case was a
swearing match between the complainant and [defendant].@); Sessums,
129 S.W.3d at 245  (the court of appeals stated there was no eyewitness
testimony or medical evidence of sexual assault); Miller, 757 S.W.2d at
881 (the court of appeals noted there was no medical evidence of sexual assault
and the primary issue at trial was the credibility of the complainant).  Here,
because E.A.=s sister corroborated significant details of E.A.=s testimony
regarding the abuse, resolution of the credibility issue was not dependent upon
the challenged expert testimony.  Finally, there is little basis for
attributing the length of the sentence imposed on appellant to the experts= testimony rather
than the testimony of complainant=s sister N.A.
during the punishment phase.  N.A. testified she too had been sexually abused
by appellant under circumstances similar to those described by the complainant,
and this testimony is unchallenged on appeal.  Accordingly, we hold appellant
has not established the second Strickland prong: a reasonable
probability that, but for counsel=s unprofessional
errors, the result of the trial would have been different.  Failure to prove
both prongs vitiates the claim of ineffective assistance of counsel.  See
Strickland, 466 U.S. at 687, 104 S. Ct. at 2064.  We overrule appellant=s single issue on
appeal.

 

 

 








Conclusion

Having overruled appellant=s only issue on
appeal, we affirm the judgment of the trial court.

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment rendered
and Opinion filed May 20, 2008.

Panel consists of
Chief Justice Hedges, and Justices Anderson and Boyce.

Publish C Tex. R. App. P. 47.2(b).

 

 









[1]  The fact appellant=s trial counsel attempted to prevent the admission of some of the
inadmissible expert testimony defeats any argument appellant=s trial counsel was following a trial strategy (1) of
not objecting to the testimony in order not to emphasize the critical nature of
the testimony in front of the jury; or (2) aimed at discrediting E.A. by using the State=s experts.