COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



§

ROBERT D. MAXWELL,                                        No. 08-14-00028-CR

§

              Appellant,                                  Appeal from the

§

v.                                                            199th Judicial District Court

§

THE STATE OF TEXAS,                                     of Collin County, Texas

§

              Appellee.                               (TC# 199-80491-2012)

§

## **O P I N I O N**

Appellant Robert D. Maxwell appeals his convictions for indecency with a child. In three issues, Appellant challenges the trial court's evidentiary rulings, raises a claim of ineffective assistance of counsel, and complains about the trial court's failure to give a unanimity instruction in the jury-charge. We affirm the convictions.[1]

### **BACKGROUND**

In cause number 199-80491-2012, Appellant was indicted on seven counts of indecency with a child, H.S., by touching.[2] After the close of evidence, however, the State proceeded with

---

[1] As this case was transferred from our sister court in Dallas, Texas, we decide it in accordance with the precedent of that court. TEX.R.APP.P. 41.3; *see* TEX.GOV'T CODE ANN. § 73.001 (West 2013).

[2] To protect the complainants' anonymity, the complainants will be referred to by the initials of their full name. TEX.R.APP.P. 9.10(a)(3).

only two of the seven counts. The jury returned a "guilty" verdict for both counts and assessed punishment at five years' confinement. This sentence is to run consecutively with the sentence imposed in 199-80460-2013. Appellant now appeals these convictions on several grounds.

The complainants in these companion cases are M.E. and H.S.[3] Appellant is M.E.'s stepfather. H.S. is M.E.'s friend. At trial, M.E. testified that Appellant first began by taking M.E. to various stores when M.E. was in the seventh and eighth grade. During these outings, M.E. explained, Appellant would drive to dark and remote areas within store parking lots. M.E. further explained that the trips first consisted of Appellant exposing himself and asking M.E. to watch, which M.E. refused. M.E. described how, over time, Appellant ridiculed M.E. into watching Appellant masturbate and later, "talked [M.E.] into touching [Appellant]." While M.E. was unable to remember the specifics of all the incidents, M.E. testified that these "parking lot" incidents occurred more than once and gradually progressed to Appellant forcing M.E. to masturbate Appellant.

M.E. also testified to certain "swimming" incidents. M.E. described how, on more than one occasion at the pool, Appellant began by tickling M.E. and H.S. M.E. further testified that Appellant would then follow M.E. and H.S. around the pool and grab both M.E. and H.S.'s breasts over their bathing suits—what M.E. referred to as *scooping*. Lastly, M.E. testified to certain "mudding" incidents. During these outings, M.E. explained that Appellant would drive recklessly in order to startle both M.E. and H.S. M.E. explained that to make Appellant stop the reckless driving, M.E. had to kiss H.S. Once stopped, M.E. explained, Appellant would get out of the vehicle and masturbate. In addition, M.E. testified to a mudding incident where Appellant grabbed H.S.'s breast. H.S. also testified at trial, corroborating M.E.'s testimony: H.S. testified

---

[3] This appeal, 08-14-00028-CR (cause no. 199-80491-2012) is a companion case to 08-14-00027-CR (cause no. 199-80460-2013). H.S. is the complainant in 199-80491-2012, the case at hand, while M.E. is the complainant in the companion case 199-80460-2013 (08-14-00027-CR). The cases were tried jointly.

2

Appellant touched her breast during a mudding trip and that Appellant touched her breasts in the family pool.

M.E.'s first forensic interview was with Lydia Conner. During this interview, M.E. made certain allegations, however, M.E. admitted during trial that she previously lied when she told a friend at school that Appellant raped M.E. Nevertheless, M.E. testified that while she initially lied to investigators, moving to Nebraska and away from Appellant made it easier to talk about the incidents.

Sandra Maddox ("Ms. Maddox") also testified at trial. Ms. Maddox lived in Appellant's neighborhood. Ms. Maddox testified that after uncomfortably observing M.E. and H.S. interact with Appellant, she invited M.E. to her barn where M.E. confessed that on one occasion on their way to the store, Appellant stopped his vehicle, masturbated, and made M.E. touch Appellant's penis. Sometime after M.E.'s conversation with Ms. Maddox, Ms. Maddox called H.S.'s older brother and informed him of her concerns. H.S.'s bother informed his parents about the contents of the call, and H.S.'s parents ultimately notified the police.

M.E.'s father also testified at trial. Appellant attempted to question M.E.'s father about an allegation that M.E. made involving M.E.'s father's father-in-law. Outside the presence of the jury, Appellant explained that this testimony would establish that when M.E.'s mother was upset, M.E. would fabricate allegations of abuse so that M.E.'s mother could get her way. Specifically, and still outside the presence of the jury, M.E.'s father explained that once after leaving Nebraska, M.E. told M.E.'s mother that M.E.'s father's father-in-law had a sexual conversation—what M.E.'s father referred to as a "sex talk"—with M.E. M.E.'s father stated that M.E.'s mother did not want M.E. to return to Nebraska with M.E.'s father because of this conversation. M.E.'s father further explained that this allegation was never investigated or

3

confirmed. M.E. never returned to Nebraska. After listening to arguments on the issue and M.E.'s father's testimony, the trial court ruled that M.E.'s father's testimony was inadmissible and was therefore not presented to the jury. Appellant's first issue is regarding the trial court's ruling on the Nebraska allegation testimony.

Andrea Kemp ("Ms. Kemp"), a forensic interviewer with the Family Advocacy Network in Kearney, Nebraska, testified on the State's behalf as an expert witness.[4] Ms. Kemp conducted M.E.'s second forensic interview in Nebraska. During cross-examination, Appellant's trial counsel asked Ms. Kemp how many forensic interviews Ms. Kemp had conducted and, in a follow-up question, also asked how many of these interviews were ultimately determined false outcries. Ms. Kemp responded to Appellant's trial counsel's follow-up question, without any objection, that "maybe two to three percent" were false outcries. In a second issue, Appellant argues that the Appellant's trial counsel was ineffective by eliciting this inadmissible testimony.

In the companion case, trial cause no. 199-80460-2013, the State charged Appellant with four counts of indecency with a child by: (1) touching M.E.'s genital's with Appellant's hand; (2) causing the hand of M.E. to touch Appellant's genitals; (3) touching the breasts of M.E.; and (4) exposing part of Appellant's genitals. The jury acquitted Appellant on Counts (1) and (3) and convicted Appellant on Counts (2) and (4).

In the case at hand, Appellant was indicted on seven counts of indecency with a child by touching the breasts of H.S. After the close of evidence, however, the State proceeded with only two of the seven counts. The jury returned a "guilty" verdict for both counts.

The jury-charge stated the unanimity requirement in the "Presiding Juror" section. The jury-charge in this case contained a general unanimity instruction informing the jury that, "[y]our

---

[4] The record does not contain a witness list nor was Ms. Kemp designated as an expert at trial, however, both the Appellant and the State referred to Ms. Kemp as an expert.

4

verdict must be unanimous and signed by the presiding juror." In a third issue, Appellant asserts that the trial court erred when it did not give the jury a more explicit unanimity instruction concerning which incident of exposure constituted the indecency by exposure count.

## DISCUSSION

In three issues, Appellant asserts that: (1) the trial court erred by excluding impeachment evidence (the Nebraska allegation) that the complainant, M.E., previously accused a relative of having an "inappropriate" sexual conversation with M.E.; (2) trial counsel rendered ineffective assistance by eliciting inadmissible testimony regarding the truthfulness of the class of persons to whom the complainants belong; and (3) the trial court erred by failing to give a unanimity instruction requiring the jurors to unanimously agree which of the alleged incidents at trial constituted each of the charged offenses.

### 1. Exclusion of Impeachment Evidence

Appellant first argues the trial court should have admitted testimonial evidence of the Nebraska allegation since it showed M.E.'s motive to lie to facilitate M.E.'s mother intent to keep M.E. with her, which, in turn, would undermine M.E.'s credibility.

Appellant raised the same issues and submitted the identical brief in the companion case. Upon close examination of this issue, Appellant fails to discuss how impeachment of M.E.'s credibility adversely impacts the case against Appellant for complainant H.S. Further, we fail to see how Appellant is harmed by the exclusion of this evidence regarding M.E.'s credibility as to the counts involving H.S.

Appellant's first issue is overruled.

### 2. Ineffective Assistance of Counsel

In a second issue, Appellant contends that his trial counsel's representation was

5

ineffective when counsel elicited inadmissible testimony: namely, expert testimony regarding the truthfulness of the class of persons to which the complainants belong.

## A. Standard of Review

To prevail on a claim of ineffective assistance of counsel, an appellant must establish by a preponderance of the evidence that: (1) trial counsel's performance was deficient; and (2) that this deficient performance deprived appellant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Ex parte Chandler*, 182 S.W.3d 350, 353 (Tex.Crim.App. 2005). Appellant must satisfy both *Strickland* components; the failure to satisfy either will defeat his ineffectiveness claim. *Perez v. State*, 310 S.W.3d 890, 893 (Tex.Crim.App. 2010).

Under the first prong of *Strickland*, the appellant must show that trial counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2064. Stated differently, the appellant must show by a preponderance of the evidence that trial counsel's actions did not meet the objective norms for professional conduct. *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex.Crim.App. 2002). Under the second prong of *Strickland*, the appellant must establish that there is a reasonable probability that but for trial counsel's deficient performance, the outcome of the case would have been different. *Mitchell*, 68 S.W.3d at 642. Reasonable probability is that which is sufficient to undermine the confidence in the outcome. *Id*.

We presume that the representation fell within the wide range of reasonable and professional assistance. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex.Crim.App. 2001). Ineffective assistance claims must be firmly founded in the record to overcome this presumption. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App. 1999). In most direct appeals, this task is very

difficult because the record is undeveloped and, as such, cannot reflect the potential failings of trial counsel. *Thompson*, 9 S.W.3d at 813-14. Claims of ineffective assistance of counsel are generally not successful on direct appeal because of the undeveloped record and are thus more appropriately developed an application for writ of habeas corpus. *Lopez v. State*, 343 S.W.3d 137, 143 (Tex.Crim.App. 2011). "[W]hen no reasonable trial strategy could justify the trial counsel's conduct, counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for acting as [trial counsel] did." *Andrews v. State*, 159 S.W.3d 98, 102 (Tex.Crim.App. 2005).

## B. Analysis

Expert testimony that a particular witness is truthful is inadmissible under Rule 702.[5] *Yount v. State*, 872 S.W.2d 706, 711 (Tex.Crim.App. 1993). Moreover, an expert may not give an opinion that a complainant, such as a sexual assault victim, or the complainant's class is truthful. *Yount*, 872 S.W.2d at 712; *cf. Schutz v. State*, 957 S.W.2d 52, 71 (Tex.Crim.App. 1997)(testimony regarding the *ability to perceive* is allowed whereas a *tendency* testimony is not allowed). Appellant points to several cases where our sister courts found a defendant's trial counsel to be ineffective based on the admission of inadmissible expert testimony regarding a witness's testimony. In each of the cases, however, the ineffective assistance stemmed from the trial counsel's *failure to object* to inadmissible expert opinion testimony regarding each of the child-complainant's truthfulness.

In *Fuller v. State*, the State elicited the expert's opinion testimony regarding "[the expert's] particular determination of [the child-complainant's] truthfulness." 224 S.W.3d 823,

---

[5] Texas Rule of Evidence 702 provides, in relevant part: "A witness who is qualified as an expert . . . will help the trier of fact to understand the evidence or to determine a fact in issue."

835 (Tex.App.--Texarkana 2007, no pet.). On appeal, "[appellant] complain[ed] his counsel was ineffective in not objecting[.]" *Fuller*, 224 S.W.3d at 829. In *Sessums v. State*, four expert witnesses were asked "to explain and then comment directly on the factors they used in determining if this [child-complainant] was telling the truth." 129 S.W.3d 242, 248 (Tex.App.--Texarkana 2004, pet. ref'd). On appeal, "[appellant] argue[d] counsel was ineffective because he did not object[.]" *Id.* at 246. In *Miller v. State*, two experts and the child-complainant's mother testified "that each believed [child-]complainant was telling the truth[.]" 757 S.W.2d 880, 883 (Tex.App.--Dallas 1988, pet. ref'd). In resolving the appeal, the court determined that the testimony "was inadmissible and should have been objected to by defense counsel." *Id.* at 883. Lastly, in *Garcia v. State*, a detective and an expert testified over "the truthfulness of the testimony of the complaining witnesses." 712 S.W.2d 249, 253 (Tex.App.--El Paso 1986, pet. ref'd). On appeal, the complaint was "the failure to make proper objections to exclude the inadmissible and prejudicial testimony . . . ." *Id.*

The present case is different: Appellant's trial counsel elicited the complained-of testimony regarding M.E. truthfulness. Appellant's trial counsel began by inquiring into Ms. Kemp's interview process. After asking how many forensic interviews Ms. Kemp had conducted, Appellant's trial counsel asked how many were ultimately determined to be false outcries, which Ms. Kemp responded, "maybe two to three percent." Appellant's trial counsel followed up by inquiring into the cause of the false outcries, and Ms. Kemp explained that most of these false outcries involved custody battles. Appellant's trial counsel never inquired into Ms. Kemp's specific opinion of M.E.'s truthfulness.

Although the reasons for trial counsel's conduct may not readily appear in the record, if there is at least a possibility the conduct could have been a part of a legitimate trial strategy, we

8

will generally defer to trial counsel's decisions. *Ortiz v. State*, 93 S.W.3d 79, 88-89 (Tex.Crim.App. 2002). The record is entirely void of any explanation for trial counsel's conduct. In reviewing the entire dialogue surrounding the complained-of testimony, we find that a possible motive was to suggest that allegations of abuse may arise in custody battles—as in M.E.'s case. Applying the presumption of reasonable professional assistance, and in finding a possible trial strategy, we conclude that Appellant has failed to satisfy the first prong of *Strickland*. *See King v. State*, 91 S.W.3d 375, 383 (Tex.App.--Texarkana 2002, pet. ref'd)(holding that where trial counsel acted affirmatively and the record was undeveloped, the appellant failed the first prong of *Strickland*); *see also Sorrells v. State*, No. 03-08-00072-CR, 2010 WL 1404625, at *10 (Tex.App.--Austin Apr. 9, 2010, pet. ref'd)(mem. op., not designated for publication)(holding that where "the record is undeveloped with regard to defense counsel's reasoning for his actions, and because his actions *could* reasonably have been part of a sound trial strategy, we conclude [the appellant] has not proven by a preponderance of the evidence that defense counsel provided deficient performance . . . .")[Emphasis added].[6] Because Appellant must satisfy both prongs of *Strickland* and he failed this first prong, we decline to address the second prong. For the above reasons, we overrule Appellant's second issue.

### 3. Unanimity Instruction

In a third issue, Appellant argues the trial court erred by failing to give a unanimity instruction requiring the jurors to unanimously agree which alleged incidents involving H.S. constituted each of the charged offenses.

### A. *Standard of Review*

Appellate courts review claims regarding jury-charge errors under a two-pronged test.

---

[6] We also note that Appellant's trial counsel referred to "our trial strategy" during the trial and was attentive enough to object to a possible hearsay statement before it was made.

*Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984). First, we must determine whether error exists; second, if error exists, we then evaluate the harm caused by the error. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex.Crim.App. 2005). Next, if there is a charge error, the degree of harm required for reversal depends on whether the error was preserved at trial. *Almanza*, 686 S.W.2d at 171; *Neal v. State*, 256 S.W.3d 264, 278 (Tex.Crim.App. 2008). If the error was preserved, we review for "some harm" whereas unpreserved errors are reversible only for egregious harm. *Almanza*, 686 S.W.2d at 171.

## B. Analysis

The governing law in Texas requires that a jury verdict be unanimous in all criminal cases. TEX.CODE CRIM.PROC.ANN. art. 36.29(a)(West Supp. 2016); *Cosio v. State*, 353 S.W.3d 766, 771 (Tex.Crim.App. 2011). Stated differently, "the jury must be unanimous in finding every constituent element of the charged offense in all criminal cases." *Jourdan v. State*, 428 S.W.3d 86, 94 (Tex.Crim.App. 2014). Unanimity "means that the jury must 'agree upon a single and discrete incident that would constitute the commission of the offense alleged.'" *Cosio*, 353 S.W.3d at 771, (*quoting Stuhler v. State*, 218 S.W.3d 706, 717 (Tex.Crim.App. 2007)).

"[T]hree variations may result in non-unanimous verdicts as to a particular incident of criminal conduct[.]" [Internal citations and footnotes omitted]. *Cosio*, 353 S.W.3d at 771. Of the three variations, Appellant basis his non-unanimity appeal on the fact that the State charged a particular offense and presented evidence that the defendant committed that offense on multiple, separate occasions. *See Cosio*, 353 S.W.3d at 772. If the State presents evidence that the defendant committed the charged offense on multiple occasions, the trial court can ensure unanimity by instructing the jury that its verdict must be unanimous as to a single offense among those presented. *Id*. at 772. The instruction, however, should not refer to any specific evidence

10

and should permit the jury to return a general verdict. *Cosio*, 353 S.W.3d at 776. A constitutional unanimity violation is subject to the constitutional harm standard when properly preserved by a timely and specific objection at trial. *Id*. at 776; *see* TEX.R.APP.P. 33.1(a). A jury-charge error, however, will never be waived by a defendant's failure to object at trial. *Almanza*, 686 S.W.2d at 171. In the present case, the issue of a more specific unanimity instruction was not properly preserved, therefore we analyze jury-charge error, if there is one, under the egregious harm standard. *See Cosio*, 353 S.W.3d at 776.

### i. Jury-Charge Error

When analyzing a potential jury-charge error, we must first determine if error exists. *Ngo*, 175 S.W.3d at 743. Appellant claims that the State charged two offenses (two counts of indecency with a child by touching) and presented evidence that the defendant committed the offense on multiple occasions. Appellant's trial counsel did not raise a jury-charge issue at trial. As an initial matter, we note that the jury-charge in this case contained the general unanimity instruction informing the jury that, "[y]our verdict must be unanimous and signed by the presiding juror." Appellant argues that this instruction was insufficient because the State presented evidence of more than one incident to prove the offense of indecency with a child by touching. *See Cosio*, 353 S.W.3d at 772, ("non-unanimity may occur when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions.").

Appellant insists that the trial court should have submitted a unanimity instruction for each count. At trial, Appellant did not produce an alternate jury-charge. During closing arguments, Appellant's trial counsel detailed *two* incidents of Appellant touching H.S.'s breasts: the mudding incident and the swimming incident. As such, the jury could have based their first

11

conviction on the testimonial evidence of M.E., H.S., and Ms. Maddox to reach the unanimous verdict that Appellant touched H.S.'s breast during the swimming incident; second, the jury could have based their second conviction on the testimonial evidence of M.E. and H.S. to reach the unanimous verdict that Appellant touched H.S.'s breasts during the mudding incident. We find that in H.S.'s case, the jury-charge allowed for unanimous verdicts in both counts. We conclude the jury-charge involving H.S. did not contain an error and allowed for a unanimous verdict. Issue three is overruled.

## CONCLUSION

Having overruled Appellant's three issues on appeal, we affirm the convictions.


October 31, 2016
                                    YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)