COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  |  |  |
|---|---|---|
| ROBERT D. MAXWELL, | § | No. 08-14-00027-CR |
| | § | |
| Appellant, | § | Appeal from the |
| | § | |
| v. | § | 199th Judicial District Court |
| | § | |
| THE STATE OF TEXAS, | § | of Collin County, Texas |
| | § | |
| Appellee. | § | (TC# 199-80460-2013) |
| | § | |

## **O P I N I O N**

Appellant Robert D. Maxwell appeals his convictions for indecency with a child. In three issues, Appellant challenges the trial court's evidentiary rulings, raises a claim of ineffective assistance of counsel, and complains about the trial court's failure to give a unanimity instruction in the jury-charge. We affirm the convictions.[1]

## **BACKGROUND**

In cause number 199-80460-2013, Appellant was indicted on four counts of indecency with a child, M.E.[2] Appellant pleaded "not guilty" to the charged offenses. A jury returned a

---

[1] As this case was transferred from our sister court in Dallas, Texas, we decide it in accordance with the precedent of that court. TEX. R. APP. P. 41.3; *see also*, TEX.GOV'T CODE ANN. § 73.001 (West 2013).

[2] To protect the complainants' anonymity, we will refer to them by the initials of their full names. TEX.R.APP.P. 9.10(a)(3).

"guilty" verdict for two of the four counts. The judgment of the court assessed punishment at ten years' confinement to run consecutively with trial cause no. 199-80491-2012 on one count and the other, ten years confinement suspended, with ten years community supervision. Appellant now appeals his convictions on several grounds.

The complainants in these companion cases are M.E. and H.S.[3] Appellant is M.E.'s stepfather. At trial, M.E. testified that Appellant first began by taking M.E. to various stores when M.E. was in the seventh and eighth grade. During these outings, M.E. explained, Appellant would drive to dark and remote areas within store parking lots. M.E. further explained that the trips first consisted of Appellant exposing himself and asking M.E. to watch, which M.E. refused. M.E. described how, over time, Appellant ridiculed M.E. into watching Appellant masturbate and later, "talked [M.E.] into touching [Appellant]" While M.E. was unable to remember the specifics of all the incidents, M.E. testified that these "parking lot" incidents occurred more than once and gradually progressed to Appellant forcing M.E. to masturbate Appellant.

M.E. also testified to certain "swimming" incidents. M.E. described how, on more than one occasion at the pool, Appellant began by tickling M.E. and M.E.'s friend, H.S. M.E. further testified that Appellant would then follow M.E. and H.S. around in the pool and grab both M.E. and H.S.'s breasts over their bathing suits—what M.E. referred to as *scooping*. Lastly, M.E. testified to certain "mudding" incidents. During these outings, M.E. explained that Appellant would drive recklessly in order to startle both M.E. and H.S. M.E. explained that to make Appellant stop the reckless driving, M.E. had to kiss H.S. Once stopped, M.E. explained, Appellant would get out of the vehicle and masturbate. In addition, M.E. testified to a mudding

---

[3] This appeal, 08-14-00027-CR (cause no. 199-80460-2013) is a companion case to 08-14-00028-CR (cause no. 199-80491-2012). These cases were tried jointly. M.E. is the complainant in 199-80460-2013, the case at hand, and H.S. is the complainant in the companion case 199-80491-2012 (08-14-00028-CR).

incident where Appellant grabbed H.S.'s breast.

M.E.'s first forensic interview was with Lydia Conner. During this interview, M.E. made certain allegations that Sergeant Jim Blackburn ("Sgt. Blackburn") with the Collin County Sheriff's Office reviewed. Sgt. Blackburn testified that while he did not think there was enough to charge a crime, "it seemed that there was enough happened [sic] that it disturbed [M.E.] enough to make the allegation." At trial, M.E. testified that she previously told a friend that Appellant raped M.E., which had given rise to this first interview. While Sgt. Blackburn declined to further investigate, he did refer the interview to Child Protective Services.

M.E. admitted during trial that she previously lied when she told a friend at school that Appellant raped M.E. Nevertheless, M.E. testified that while she initially lied to investigators and denied that anything occurred, moving to Nebraska and away from Appellant made it easier to talk about the incidents.

Sandra Maddox ("Ms. Maddox") also testified at trial. Ms. Maddox lived in Appellant's neighborhood. Ms. Maddox testified that after uncomfortably observing M.E. and H.S. interact with Appellant, she invited M.E. to her barn where M.E. confessed that on one occasion on their way to the store, Appellant stopped his vehicle, masturbated, and made M.E. touch Appellant's penis. Sometime after M.E.'s conversation with Ms. Maddox, Ms. Maddox called H.S.'s older brother and informed him of her concerns. H.S.'s bother informed his parents about the contents of the call, and H.S.'s parents ultimately notified the police.

M.E.'s father also testified at trial. Appellant attempted to question M.E.'s father about an allegation that M.E. made involving M.E.'s father's father-in-law. Outside the presence of the jury, Appellant explained that this testimony would establish that when M.E.'s mother was displeased, M.E. would fabricate allegations of abuse so that M.E.'s mother could get her way.

3

Specifically, and still outside the presence of the jury, M.E.'s father explained that once after leaving Nebraska, M.E. told M.E.'s mother that M.E.'s father's father-in-law had a sexual conversation—what M.E.'s father referred to as a "sex talk"—with M.E. M.E.'s father stated that M.E.'s mother did not want M.E. to return to Nebraska with M.E.'s father because of this conversation. M.E.'s father further explained that this allegation was never investigated or confirmed. M.E. never returned to Nebraska. After listening to arguments on the issue and the M.E.'s father's testimony, the trial court ruled that M.E.'s father's testimony was inadmissible and was therefore not presented to the jury. Appellant's first issue is regarding the trial court's ruling on the Nebraska allegation testimony.

Andrea Kemp ("Ms. Kemp"), a forensic interviewer with the Family Advocacy Network in Kearney, Nebraska, testified on the State's behalf as an expert witness.[4] Ms. Kemp conducted M.E.'s second forensic interview in Nebraska. During cross-examination, Appellant's trial counsel asked Ms. Kemp how many forensic interviews Ms. Kemp had conducted and, in a follow-up question, also asked how many of these interviews were ultimately determined false outcries. Ms. Kemp responded to Appellant's trial counsel's follow-up question, without any objection, that "maybe two or three percent" were false outcries. In a second issue, Appellant argues that the Appellant's trial counsel was ineffective by eliciting this inadmissible testimony.

The State charged Appellant with four counts of indecency with a child by: (1) touching M.E.'s genital's with Appellant's hand; (2) causing the hand of M.E. to touch Appellant's genitals; (3) touching the breasts of M.E.; and (4) exposing part of Appellant's genitals. The jury acquitted Appellant on Counts (1) and (3) and convicted Appellant on Counts (2) and (4).

In the companion case, trial cause no. 199-80491-2012, Appellant was indicted on seven

---

[4] The record does not contain a witness list nor was Ms. Kemp designated as an expert at trial, however, both the Appellant and the State referred to Ms. Kemp as an expert.

counts of indecency with a child by touching the breasts of a child, H.S. After the close of evidence, however, the State proceeded with only two of the seven counts. The jury returned a "guilty" verdict for both counts.

The jury-charge stated the unanimity requirement in the "Presiding Juror" section. The jury-charge in this case contained a general unanimity instruction informing the jury that, "[y]our verdict must be unanimous and signed by the presiding juror." In a third issue, Appellant asserts that the trial court erred when it did not give the jury a more explicit unanimity instruction concerning which incident of exposure constituted the indecency by exposure count.

## DISCUSSION

In three issues, Appellant asserts that: (1) the trial court erred by excluding impeachment evidence (the Nebraska allegation) that the complainant, M.E., previously accused a relative of having an "inappropriate" sexual conversation with M.E.; (2) trial counsel rendered ineffective assistance by eliciting inadmissible testimony regarding the truthfulness of the class of persons to whom the complainants belong; and (3) the trial court erred by failing to give a unanimity instruction requiring the jurors to unanimously agree which of the alleged incidents at trial constituted each of the charged offenses.

### 1. Exclusion of Impeachment Evidence

Appellant first argues the trial court should have admitted testimonial evidence of the Nebraska allegation since it showed M.E.'s motive to lie and facilitate M.E.'s mother's desires to keep M.E. with her, which, in turn, would undermine M.E.'s credibility.

### A. Standard of Review

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Jackson v. State*, Nos. 05-13-00579-CR, 05-13-00580-CR, 2014 WL

5

3955171, at *1 (Tex.App--Dallas Aug. 14, 2014, no pet.)(mem. op., not designated for publication), *citing Page v. State*, 213 S.W.3d 332, 337 (Tex.Crim.App. 2006). A trial court's determination that is within the zone of reasonable disagreement will not be disturbed on appeal. *Jackson*, 2014 WL 3955171 at *1, *citing Burden v. State*, 55 S.W.3d 608, 615 (Tex.Crim.App. 2001).

## B. Analysis

It is well established that a witness's credibility may not be impeached with specific instances of the witness's conduct other than specific criminal convictions. TEX.R.EVID. 608(b). Nevertheless, the Texas Court of Criminal Appeals has acknowledged that the Confrontation Clause of the Sixth Amendment may require admission of evidence that Rule 608(b) would otherwise bar. *Lopez v. State*, 18 S.W.3d 220, 225 (Tex. Crim. App. 2000). In *Lopez*, appellant Lopez was charged and convicted of aggravated sexual assault of a child and indecency with a child. *Id.* at 222. Lopez purportedly compelled a twelve-year-old to perform oral sex on Lopez over the course of several months. *Id.* at 221. Lopez unsuccessfully attempted to impeach the twelve-year-old's credibility with testimonial evidence about a complaint the twelve-year-old previously made: that his mother had thrown him against a washing machine. *Id.* The Court in *Lopez* held that sex abuse cases create no *per se* exception to Rule 608(b) and, in balancing the probative value of the testimonial evidence against the risk of admission, determined this testimonial evidence would unduly prejudice the jury. *Id.* at 225–26. In conducting its analysis, the Court found that while the twelve-year-old's credibility was a crucial issue a trial, the fact that the washing machine incident was never proven false, in addition to its dissimilarity to oral sex, meant it would very likely confuse the jury. *Id.* at 226 ("Its probative value was extremely low, and the risk that its admission would confuse the jury was high.").

6

The Court, however, has found that a defendant is entitled to show any relevant fact that might tend to establish ill feeling, bias, motive, interest, or animus on the part of any witness testifying against him, subject to reasonable restrictions. *Billodeau v. State*, 277 S.W.3d 34, 43 (Tex.Crim.App. 2009), *citing* TEX.R.EVID. 613(b). Finding that the trial court abused its discretion, the Court in *Billodeau* determined the defendant was entitled to present evidence that the child-complainant in an aggravated sexual assault prosecution made false threats accusing two neighbors of sexual molestation. *Id*. at 43. There, child-complainant alleged the defendant had kissed the child-complainant, put his penis in the child-complainant's anus, and then threated to kill the child-complainant if the child-complainant told anyone about the incident. *Id*. at 37. The child-complainant in *Billodeau* suffered from a mental illness since the age of four up until the date of the alleged incident, when the child-complainant was eight years of age. *Id*. at 37-38. The Court noted that this mental illness contributed to the child-complainant's acts of rage and anger and that the child-complainant understood the definition molestation. *Id*. at 38, 42. The Court determined that the child-complainant's previous false threats accusing neighbors of molestation when angry about perceived injustices were similar to the issue on appeal there: the accusation that the defendant in *Billodeau* had molested the child-complainant. *Id*. at 43. In conducting a non-constitutional, Rule of Appellate Procedure 44.2(b)[5] analysis, the Court determined that the defendant in *Billodeau* was entitled to present evidence of the false threats *after* the child-complainant denied making the false threats. *Id*. at 43.

We find that the present case falls in line with *Lopez*. Like *Lopez*, the Nebraska allegation was never developed nor shown to be false. *See Lopez*, 18 S.W.3d at 225-26. In addition, the Nebraska allegation was dissimilar to the parking lot, swimming, and mudding

---

[5]The rule provides: "Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." *See*, TEX.R.APP.P. 44.2(b).

incidents, namely: the Nebraska allegation involved a "sex talk" while the others involved more than a conversation. *See id.* Moreover, this case involved multiple incidents (the parking lot, swimming, and mudding incidents) and two victims with similar allegations, unlike *Billodeau*, which involved one allegation of molestation against the defendant and one victim, who suffered from a mental illness. *Billodeau*, 277 S.W.3d at 38-42. Lastly, the Appellant cross-examined M.E. but failed to mention the Nebraska allegation; as such, M.E. never denied the allegation at trial, which would have then given rise to a 613(b)(3)[6] examination.[7] As such, we find the trial court did not abuse its discretion and that the risk of confusion was high, outweighing the testimony's probative value. Because we find the present case in line with *Lopez* and unlike *Billodeau*, Appellant's first issue is overruled.

## 2. Ineffective Assistance of Counsel

In a second issue, Appellant contends that his trial counsel's representation was ineffective when counsel elicited inadmissible testimony: namely, expert testimony regarding the truthfulness of the class of persons to which the complainants belong.

### A. Standard of Review

To prevail on a claim of ineffective assistance of counsel, an appellant must establish by a preponderance of the evidence that: (1) trial counsel's performance was deficient; and (2) that this deficient performance deprived appellant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Ex parte Chandler*, 182 S.W.3d 350, 353 (Tex.Crim.App. 2005). Appellant must satisfy both *Strickland* components; the failure to

---

[6] Texas Rules of Evidence 613(b)(3) provides, in relevant part, that when examining a witness about a bias or interest, a party must first inform the witness of the circumstances surrounding the bias or interest and the witness "*must* be given the opportunity to explain or deny" the circumstances, and only if the witness denies can extrinsic evidence be admitted. [Emphasis added].

[7] The Appellant and the State failed to discuss this rule on appeal.

satisfy either will defeat his ineffectiveness claim. *Perez v. State*, 310 S.W.3d 890, 893 (Tex.Crim.App. 2010).

Under the first prong of *Strickland*, the appellant must show that trial counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2064. Stated differently, the appellant must show by a preponderance of the evidence that trial counsel's actions did not meet the objective norms for professional conduct. *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex.Crim.App. 2002). Under the second prong of *Strickland*, the appellant must establish that there is a reasonable probability that but for trial counsel's deficient performance, the outcome of the case would have been different. *Mitchell*, 68 S.W.3d at 642. Reasonable probability is that which is sufficient to undermine the confidence in the outcome. *Id.*

We presume that the representation fell within the wide range of reasonable and professional assistance. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex.Crim.App. 2001). Ineffective assistance claims must be firmly founded in the record to overcome this presumption. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App. 1999). In most direct appeals, this task is very difficult because the record is undeveloped and, as such, cannot reflect the potential failings of trial counsel. *Id.* at 813-14. Claims of ineffective assistance of counsel are generally not successful on direct appeal because of the undeveloped record and are thus more appropriately developed an application for writ of habeas corpus. *Lopez v. State*, 343 S.W.3d 137, 143 (Tex.Crim.App. 2011). "[W]hen no reasonable trial strategy could justify the trial counsel's conduct, counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for acting as [trial counsel] did." *Andrews v. State*, 159 S.W.3d 98, 102 (Tex.Crim.App. 2005).

9

*B. Analysis*

Expert testimony that a particular witness is truthful is inadmissible under Rule 702.[8] *Yount v. State*, 872 S.W.2d 706, 711 (Tex.Crim.App. 1993). Moreover, an expert may not give an opinion that a complainant, such as a sexual assault victim, or the complainant's class is truthful. *Yount*, 872 S.W.2d at 712; *cf. Schutz v. State*, 957 S.W.2d 52, 71 (Tex.Crim.App. 1997) (testimony regarding the *ability to perceive* is allowed whereas a *tendency* testimony is not allowed). Appellant points to several cases where our sister courts found a defendant's trial counsel to be ineffective based on the admission of inadmissible expert testimony regarding a witness's testimony. In each of the cases, however, the ineffective assistance stemmed from the trial counsel's *failure to object* to inadmissible expert opinion testimony regarding each of the child-complainant's truthfulness.

In *Fuller v. State*, the State elicited the expert's opinion testimony regarding "[the expert's] particular determination of [the child-complainant's] truthfulness." 224 S.W.3d 823, 835 (Tex.App--Texarkana 2007, no pet.). On appeal, "[appellant] complain[ed] his counsel was ineffective in not objecting[.]" *Id.* at 829. In *Sessums v. State*, four expert witnesses were asked "to explain and then comment directly on the factors they used in determining if this [child-complainant] was telling the truth." 129 S.W.3d 242, 248 (Tex.App.--Texarkana 2004, pet. ref'd). On appeal, "[appellant] argue[d] counsel was ineffective because he did not object[.]" *Id.* at 246. In *Miller v. State*, two experts and the child-complainant's mother testified "that each believed [child-]complainant was telling the truth[.]" 757 S.W.2d 880, 883 (Tex.App.--Dallas 1988, pet. ref'd). In resolving the appeal, the court determined that the testimony "was inadmissible and should have been objected to by defense counsel." *Id.* at 883. Lastly, in

---

[8] Texas Rule of Evidence 702 provides, in relevant part: "A witness who is qualified as an expert . . . will help the trier of fact to understand the evidence or to determine a fact in issue."

*Garcia v. State*, a detective and an expert testified over "the truthfulness of the testimony of the complaining witnesses." 712 S.W.2d 249, 253 (Tex.App.--El Paso 1986, pet. ref'd). On appeal, the complaint was "the failure to make proper objections to exclude the inadmissible and prejudicial testimony . . . ." *Id.*

The present case is different: Appellant's trial counsel elicited the complained-of testimony regarding M.E. truthfulness. Appellant's trial counsel began by inquiring into Ms. Kemp's interview process. After asking how many forensic interviews Ms. Kemp had conducted, Appellant's trial counsel asked how many were ultimately determined to be false outcries, which Ms. Kemp responded, "maybe two to three percent." Appellant's trial counsel followed up by inquiring into the cause of the false outcries, and Ms. Kemp explained that most of these false outcries involved custody battles. Appellant's trial counsel never inquired into Ms. Kemp's specific opinion of M.E.'s truthfulness.

Although the reasons for trial counsel's conduct may not readily appear in the record, if there is at least a possibility the conduct could have been a part of a legitimate trial strategy, we will generally defer to trial counsel's decisions. *Ortiz v. State*, 93 S.W.3d 79, 88-89 (Tex.Crim.App. 2002). The record is entirely void of any explanation for trial counsel's conduct. In reviewing the entire dialogue surrounding the complained-of testimony, we find that a possible motive was to suggest that allegations of abuse may arise in custody battles—as in M.E.'s case. Applying the presumption of reasonable professional assistance, and in finding a possible trial strategy, we conclude that Appellant has failed to satisfy the first prong of *Strickland*. *See King v. State*, 91 S.W.3d 375, 383 (Tex.App.--Texarkana 2002, pet. ref'd) (holding that where trial counsel acted affirmatively and the record was undeveloped, the appellant failed the first prong of *Strickland*); *see also Sorrells v. State*, No. 03-08-00072-CR,

11

2010 WL 1404625, at *10 (Tex.App.--Austin Apr. 9, 2010, pet. ref'd)(mem. op., not designated for publication)(holding that where "the record is undeveloped with regard to defense counsel's reasoning for his actions, and because his actions *could* reasonably have been part of a sound trial strategy, we conclude [the appellant] has not proven by a preponderance of the evidence that defense counsel provided deficient performance . . . .")[Emphasis added].[9] Because Appellant must satisfy both prongs of *Strickland* and he failed this first prong, we decline to address the second prong. For the above reasons, we overrule Appellant's second issue.

### 3. Unanimity Instruction

In a third issue, Appellant argues the trial court erred by failing to give a unanimity instruction requiring the jurors to unanimously agree which alleged incident discussed at trial constituted each of the charged offenses.

#### A. *Standard of Review*

Appellate courts review claims regarding jury-charge errors under a two-pronged test. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984). First, we must determine whether error exists; second, if error exists, we then evaluate the harm caused by the error. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex.Crim.App. 2005). Next, if there is a charge error, the degree of harm required for reversal depends on whether the error was preserved at trial. *Almanza*, 686 S.W.2d at 171; *Neal v. State*, 256 S.W.3d 264, 278 (Tex.Crim.App. 2008). If the error was preserved, we review for "some harm" whereas unpreserved errors are reversible only for egregious harm. *Almanza*, 686 S.W.2d at 171.

#### B. *Analysis*

The governing law in Texas requires that a jury verdict be unanimous in all criminal

---

[9] We also note that Appellant's trial counsel referred to "our trial strategy" during the trial and was attentive enough to object to a possible hearsay statement before it was made.

cases. TEX.CODE CRIM.PROC.ANN. art. 36.29(a)(West Supp. 2016); *Cosio v. State*, 353 S.W.3d 766, 771 (Tex.Crim.App. 2011). Stated differently, "the jury must be unanimous in finding every constituent element of the charged offense in all criminal cases." *Jourdan v. State*, 428 S.W.3d 86, 94 (Tex.Crim.App. 2014). Unanimity "means that the jury must 'agree upon a single and discrete incident that would constitute the commission of the offense alleged.'" *Cosio*, 353 S.W.3d at 771, (*quoting Stuhler v. State*, 218 S.W.3d 706, 717 (Tex.Crim.App. 2007)).

"[T]hree variations may result in non-unanimous verdicts as to a particular incident of criminal conduct[.]" [Internal citations and footnotes omitted]. *Cosio*, 353 S.W.3d at 771. Of the three variations, Appellant basis his non-unanimity appeal on the fact that the State charged a particular offense and presented evidence that the defendant committed that offense on multiple, separate occasions. *See Cosio*, 353 S.W.3d at 772. If the State presents evidence that the defendant committed the charged offense on multiple occasions, the trial court can ensure unanimity by instructing the jury that its verdict must be unanimous as to a single offense among those presented. *Id*. at 772. The instruction, however, should not refer to any specific evidence and should permit the jury to return a general verdict. *Id*. at 776. A constitutional unanimity violation is subject to the constitutional harm standard when properly preserved by a timely and specific objection at trial. *Id*. at 776; *see* TEX.R.APP.P. 33.1(a). A jury-charge error, however, will never be waived by a defendant's failure to object at trial. *Almanza*, 686 S.W.2d at 171. In the present case, the issue has not been properly preserved therefore we analyze a charge error, if there is one, under the egregious harm standard. *See Cosio*, 353 S.W.3d at 776.

### i. Jury-Charge Error

When analyzing a potential jury-charge error, we must first determine if error exists. *Ngo*, 175 S.W.3d at 743. Appellant claims that the State charged one offense (indecency with a

13

child by exposure) and presented evidence that the defendant committed the offense on multiple occasions. Appellant's trial counsel did not raise a jury-charge issue at trial. As an initial matter, we note that the jury-charge in this case contained the general unanimity instruction informing the jury that, "[y]our verdict must be unanimous and signed by the presiding juror." Appellant argues that this instruction was insufficient because the State presented evidence of more than one incident to prove the offense of indecency with a child by exposure.[10] *See Cosio*, 353 S.W.3d at 772 ("non-unanimity may occur when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions.").

Appellant insists that the trial court should have submitted a unanimity instruction for each count. At trial, Appellant did not produce an alternate jury-charge. While a more explicit unanimity jury-charge could help reduce the likelihood of the error Appellant raises in this issue, we cannot conclusively say, without a posited alternative jury-charge, that the failure to provide a hypothetical instruction with a more explicit unanimity requirement would result in a jury-charge error. *See Curry v. State*, 222 S.W.3d 745, 753 (Tex.App.--Waco 2007, pet. ref'd)(noting that courts presume that juries follow the general unanimity instruction).

The jury-charge contained one count of indecency with a child by exposure. As such, the jury could have based their conviction of evidence of anyone of the repeated parking lot incidents, up until they progressed to actual contact, in order to unanimously find that the Appellant exposed himself to M.E.

---

[10] Appellant incorrectly claimed in his original appeal brief that the jury-charge contained two counts of indecency by exposure out of the four total counts. The indictment and the jury charge show one charge of indecency by exposure; the remaining three were charges of indecency by touching. Appellant only challenged the exposure count in the original brief, the State acknowledged the possibility of error regarding the touching counts in its response, which prompted appellant to raise both exposure and touching errors in the reply brief. For the purposes of this opinion, we will consider only those arguments raised in the original brief. *See U.S. Lawns, Inc. v. Castillo*, 347 S.W.3d 844, 849 (Tex.App.--Corpus Christi 2011, pet. denied)(It is well settled that Rule 38.3 "does not allow an appellant to include in a reply brief a new issue in response to a matter pointed out in [the] appellee's brief but not raised by the appellant's original brief."); *see also* TEX.R.APP.P. 38.3.

*ii. Harm Analysis*

Assuming, for the sake of argument, the charge was erroneous, because Appellant failed to preserve the jury-charge error at trial, reversal is warranted only if the error resulted in egregious harm. *See Neal*, 256 S.W.3d at 278. Appellant relies on the San Antonio Court of Appeal's decision in *Arrington*, another child sex abuse case in which the court overturned a conviction for jury-charge error, but that decision was reversed. *Arrington v. State*, 413 S.W.3d 106 (Tex.App.--San Antonio 2013), *rev'd,* 451 S.W.3d 834 (Tex.Crim.App. 2015).

"An egregious harm determination must be based on a finding of actual father than theoretical harm." *Cosio*, 353 S.W.3d at 777. Actual harm is established when the erroneous jury instruction affected "the very basis of the case," "deprive[d] the defendant of a valuable right," or "vitally affect[ed] a defensive theory." *Id.* In assessing harm, we consider: (1) the entire jury charge; (2) the state of the evidence, including contested issues and the weight of the probative evidence; (3) the parties' arguments; and (4) all other relevant information in the record. *Id.* This analysis is done on a case-by-case basis. *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex.Crim.App. 2013).

(1) The Entire Jury Charge

In *Cosio*, a jury convicted the defendant of two counts of aggravated sexual assault of a child and two counts of indecency with a child by contact, each supported by evidence of multiple incidents of criminal conduct. *Cosio*, 353 S.W.3d at 769-70. The trial court there gave the jury multiple instructions on unanimity, but none was adequate to appropriately inform the jurors that they had to be unanimous as to which incident of criminal conduct they believed constituted each count in the indictment. *Id.* at 774. As in *Cosio*, the defendant in *Arrington* was charged with several different sexual offenses. *Arrington*, 451 S.W.3d at 837-38. The charge

did not require the jurors to be unanimous as to which separate criminal act constituted each count, but instead, included only a generic unanimity instruction. *Id*. at 838.

In light of our analysis above (Section 3.*B.i*.), we find that the jury instructions here were unlikely erroneous since any one of the repeated parking lot incidents, up until the actual contact between the Appellant and M.E., could have been the basis for the one exposure conviction. We conclude that this factor weighs against finding egregious harm.

### (2) The State of the Evidence

Under this element, we consider the entire record in determining whether the evidence made it more or less likely that the jury-charge caused Appellant actual harm. *Casio*, 353 S.W.3d at 841. At trial, Appellant's defense against the allegations was that M.E. fabricated the allegations against him.[11] Before the allegations were fully developed, M.E.'s mother intended to move to Nebraska along with M.E. and the Appellant's son. At trial, M.E.'s mother testified regarding a court order prohibiting her from changing her domicile in Collin County, Texas. Since M.E.'s mother shared a biological son with Appellant, Appellant was able to obtain a court order preventing their son's relocation and therefore preventing M.E.'s mother from leaving Collin County. The State objected to the introduction of the court order. Appellant responded to the objection by stating that the order would "show a bias of [M.E.'s mother]." M.E.'s mother had not paid the next month's rent in Collin County, anticipating their move to Nebraska and was thereafter forcibly evicted. According to M.E.'s mother, when M.E. became aware of what was happening to her mother and brother as a result of the non-relocation order, M.E. disclosed more details regarding the misconduct of the Appellant.

If the jury had believed Appellant's theory, it would have found him not guilty of all of

---

[11] In his first issue on appeal, Appellant asserted that the trial committed an error in excluding testimony that would undermine the credibility of M.E. in order to show that she had fabricated the allegations against Appellant.

16

the counts of indecency. Instead, in finding Appellant guilty of two of the four counts of indecency towards M.E., the jury necessarily disbelieved Appellant's defensive evidence. This first sub-factor goes against finding that the state of the evidence should be weighed in favor of finding egregious harm.

Second, in light of our finding in Appellant's second issue on appeal (Section 2), the inadmissible testimony regarding the truthfulness of the class of persons to which M.E. belongs does not implicate that the state of the evidence should be weigh in finding egregious harm. *Arrington*, 451 S.W.3d at 842 (Where the Court found that inadmissible testimony regarding the child-complainant's testimony that was admitted at trial was "before the jury to consider in finding appellant guilty . . . ."). Where trial counsel fails to object, or, as in the present case, offers, inadmissible testimony, the jury could properly consider it as evidence of appellant's guilt. *Id*. at 843 ("An appellate court should not disregard evidence that was admitted for all purposes at a trial merely because it believes that a trial court could have excluded the evidence had a proper objection been presented."). Disregarding inadmissible but admitted evidence at trial would be an improper focus on theoretical harm. *Id*. This second sub-factor goes against finding that the state of the evidence should be weighed in favor of finding egregious harm.

Lastly, inconsistencies in a child-complainant's testimony alone do not warrant finding that the state of the evidence should be weighed in favor of finding egregious harm. *Arrington*, 451 S.W.3d at 843. In the present case, there were inconsistences regarding M.E.'s first forensic interview, what she told Ms. Maddox, what she told a friend, and what she later said at trial. Nevertheless, we cannot conclude that any slight inconsistencies in M.E.'s testimony had any actual effect on the unanimity of the jury's verdict; in finding Appellant guilty of two counts, the jury necessarily found M.E. credible. *See Arrington*, 451 S.W.3d at 843 ("[I]n deciding to

17

convict appellant of six counts, the jury necessarily found the complainant credible. Although [the complainant] may have been inconsistent in attempting to explain the reason for the existence of the rumors, and was somewhat inconsistent as to the types of abuse that appellant inflicted upon her during each of the four incidents, the jury clearly resolved any inconsistences in favor of [the complainant], and not appellant.").

In considering the entire record, the jury clearly credited M.E.'s story and not Appellant's defense. Had the jury believed Appellant's defense, they would have acquitted Appellant on all charges. Because the entire record fails to show actual harm to Appellant, this factor weighs strongly against a finding of egregious harm.

### (3) The Parties' Arguments

Under this factor, we look to whether any statements made by the State, Appellant, or the trial judge exacerbated or ameliorated error in the charge. *Arrington*, 451 S.W.3d at 844. In *Ngo*, the Court found egregious harm where the jury charge did not contain a unanimity instruction and the jury was explicitly and repeatedly told by the prosecution and the trial judge that it need not return a unanimous verdict. 175 S.W.3d 751 ("This is not an instance of a jury charge which is simply missing an important word—'unanimously'—which reasonable jurors might infer from the context of the entire charge or from the comments of the advocates emphasizing the correct legal principles.").

In the present case, only Appellant's trial counsel mentioned the unanimity requirement in his closing argument: "If [Appellant] is found guilty of any of the charges in this case I suggest it will be a difficult thing for you to reach *unanimously* or quickly." [Emphasis added]. This factor, therefore, we believe weighs slightly against a finding of egregious harm. *Cf. Arrington*, 451 S.W.3d at 844 (where the Court found that the factor weighed neither for nor

against finding egregious harm where neither party mentioned the unanimity requirement).

## (4) Other Relevant Information in the Record

M.E. testified to several occasions when she felt uncomfortable: the parking lot incidents, the swimming incidents, and the mudding incidents. M.E. testified as to how the parking lot incidents began by exposure and progresses to actual contact. Ms. Maddox reiterated these progressive parking lot incidents. We find that the other relevant information factor here weighs against finding egregious harm.

## (5) Conclusion of Jury-Charge Harm Analysis

Concluding that none of the factors weigh in favor of finding egregious harm, we find that if there was a jury-charge error, it would not have caused Appellant egregious harm. *See Arrington*, 451 S.W.3d at 845 (Where the Court concluded that although "the only factor that weighs in favor of finding egregious harm is the jury instructions[,] . . . the evidence in the entire record and the analytical meaning of the jury's verdicts in the aggregate show that the erroneous instructions did not cause actual harm.).

## *C. Conclusion of Appellant's Third Issue*

The potentially "erroneous jury instructions did not cause" Appellant "egregious harm" even if they failed to instruct the jury to be unanimous regarding what particular act or acts "support each count" because "the evidence in the entire record and the analytical meaning of the jury's verdicts in the aggregate show that the erroneous instructions did not cause actual harm to appellant." *See Arrington*, 451 S.W.3d at 845; *see also Cosio*, 353 S.W.3d at 777-78 (finding no egregious harm even though the jury-charge allowed for non-unanimous verdicts when two other factors did not weigh in favor of egregious harm). Issue Three is overruled.

## CONCLUSION

19

Having overruled Appellant's three issues on appeal, we affirm the convictions.


October 31, 2016

                                        YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)